Feaxk J. Puro, J.
In this article 78 proceeding the paramount issue is whether respondents may appoint principals of intermediate schools without regard to an existing civil service list initially promulgated as a junior high school principals list, from which eligibles have been drawn to fill such intermediate school positions.
The concept of the intermediate school presents an entirely new philosophy in pre-high school education. Inspired by the report of the State Education Commissioner’s Advisory Committee on Human Relations and Community Tensions (“Allen Report”) and proposals of civic and parents groups, the then Acting Superintendent of Schools, Bernard E. Donovan, developed a “Statement of Policy — Excellence for the Schools of New York City,” which was approved, by resolution, on April 28, 1965 by the Board of Education of the City of New York. The statement proposed three schools — elementary, intermediate and high school— divided initially on a 5-, 3-, 4-year basis. Elementary school would cover kindergarten through 5th grade (K-5); intermediate school would cover 6th through 8th grade (6-8); and high school would cover 9th through 12th grade (9-12). Ultimately the plan was to provide for a 4 1 4-year system. The existing organization provided for an elementary school (K-6), a junior high school (7-9), and a high school (10-12), or an elementary school (K-8) and a high school (9-12).
*432 The ‘ ‘ Statement of Policy ” reads in part as follows: “ There needs to be developed a new program of education in this city for the intermediate years of schooling. The exact grades of this new program are not so important as are its nature and content. This period of education must take the child from his elementary concentration on basic skills to the use of those skills in the acquisition of knowledge and the development of human and social relationships. In these intermediate years the child will begin to explore organized knowledge in the major subject areas. He will also use his basic skills in learning to adjust to new group activities and to somewhat more formal educational organization. One of the most important phases of his education in this period will be his introduction to other children who are different from those whom he associated with in his elementary school. It is obvious that many elementary schools in this city are going to be ethnically unbalanced by their location in the area they serve. For the very early years of basic education, this disadvantage seems to be outweighed by the benefits of a quality educational program geared to basic skills, training, parental involvement and community concern. But at or about the 5th grade there must be added to this program an extra ingredient of excellence- — -the -sharing of learning experiences and life values with other children of different races, Rationalities and economic status.
“ This means that the program for the intermediate years must contain a new organization of learning which will introduce children to these sensitive relationships. It cannot be done simply by re-shuffling the present subject matter of these years. It requires a whole new approach to the learning process. Experiences and techniques must be devised to bring children together effectively in this new school grouping. Special interests must be identified and fostered and attention must be given to the continued facility in the use of the basic skills.
“ Probably this intermediate program needs the greatest variety of specialized services of any segment of the educational program. There is obvious need for new and special testing and guidance services, for remedial work, for subject specialists and for human relations consultants. Textbooks and materials of instruction must be developed to meet this new program.”
In order that this policy and others similar throughout the State might be implemented, the Board of Regents of the State of New York on May 27, 1965 amended 8 NYCRR 80,2 of the *433 regulations of the Commissioner of Education to read as follows:
“ (h) Extension of certificate validity.
“ (1) Any school district which proposes an experiment concerned with organizational changes that alters the definition of the elementary, junior or senior high school may be granted approval for a five-year period to employ a certified teacher (or appropriately licensed teacher in the cities of New York and Buffalo) for any teaching assignment, within the scope of the experiment, for which the teacher is deemed, by the superintendent, or other legally authorized body, qualified by education and experience, provided:
“ (i) the proposed experiment is approved by the Board of Education upon the recommendation of the professional staff of the school district, and
“ (ii) the proposed experiment is approved by the Commissioner of Education, and
“ (iii) the proposed experiment includes appropriate procedures for evaluation.
“ (2) Permission to assign teachers in accordance with the terms of the experiment may be renewed for a five-year period on evidence, satisfactory to the commissioner, of instructional benefit to the children.”
In accordance with these regulations the Board of Education on June 14, 1965, passed a resolution which reads in part:
“Whereas the Board of Examiners * * * has declared that the holders of licenses or appointees or eligibles for appointment as teachers, substitute teachers, guidance counselors and supervisors in junior high schools, are qualified to serve in their respective positions in the 6th grade of the junior high schools in the program submitted by the Acting Superintendent of Schools * * *
“ Resolved, that subject to the approval of the Commissioner of Education, the Acting Superintendent of 'Schools be, and he is hereby authorized, to malee such assignments of personnel as are required to accomplish the purposes of the aforesaid program, including assignments of junior high school personnel declared appropriate by the Board of Examiners as herein-above set forth, and be it further
“Resolved, that any inconsistent provisions of the by-laws of the Board of Education be and the same hereby are suspended during the conduct of the aforesaid program.” (Emphasis supplied.)
*434 Approval of “this experiment ’ ’ was given by the Commissioner of Education on July 12, 1965 for a period of two years.
The Board of Education approved and initiated the program in 14 pilot intermediate schools in September, 1966. At the present time, 40 intermediate schools have started on some portions of the new curriculum.
Initially the program was to last until July 1, 1967. It was extended by the Commissioner of Education to July 1, 1970 and request has been made to him to further extend the program for an additional 5 years.
It has been the practice of the Board of Education to make temporary assignments of intermediate school principals from the existing junior high school principals list. This list, however, was promulgated after a noncompetitive examination announced in May, 1964, and prior to the board’s adoption of its policy of reorganization of its schools.
On April 1, 1970, the position of principal of Intermediate School 33, which is located within the geographical confines of Community Board No. 14, became vacant. The Community Board has been attempting to fill the position with one Claude Huntley, a licensed teacher in the New York City school system. He does not hold a New York City license for the position of junior high school principal nor does his name appear on the eligibility list for junior high school principal. However, he has been certified by the New York ¡State Education Department as an elementary school principal effective February 1, 1969 pursuant to the regulations of the New York State Commissioner of Education 8 NYCRR 80.4. As of September 1, 1970, he became eligible in accordance with the foregoing regulations to he certified by the State Education Department, upon payment of the required fee, as a school administrator and supervisor, to serve in any administrative-supervisory position up to and including that of Deputy Superintendent of Schools. Among the various administrative experiences that he has acquired is that of an acting assistant principal for four years at Public School No. 36 in New York City. The Community Board now seeks to appoint Mr. Huntley as acting principal of the school, but the appointment has been stayed with the commencement of these proceedings. In the meanwhile, the Community Superintendent has been acting as the school’s principal.
Petitioners contend that the existing eligible list for principal of a junior high school is intended to serve interchangeably and *435 exclusively for appointment either to a junior high school or to an intermediate school and since a vacancy for the position of principal exists at Intermediate School 33, it is required to be filled within six months with one whose name appears on this eligible list or, in the alternative, by transfer of an appointed junior high school principal from another school. They also complain that the appointment of Mr. Huntley as acting principal for this vacancy violates a resolution of the Board of Education wherein it has provided the standards for the selection of acting principals to fill temporary vacancies, since he does not meet the requirements set therein.
In substance respondents contend that the junior high school eligible list does not entitle one whose name appears thereon to be considered, as a matter of right, for appointment to an intermediate school vacancy. They urge that since these schools are experimental — unique and innovative — and the criteria for principal for such schools has not as yet been developed, they have the capacity to temporarily appoint to the position one who, in their judgment, has the qualities necessary to meet the new challenges that are presented. In addition, they assert that even if they would have to honor the junior high school list, a permanent appointment would not be required until September, 1971 and they could, under these circumstances, appoint an acting principal.
The intermediate school has not been created from the mold of the junior high school. Its philosophy, curriculum and problems differ materially. Junior high schools were developed with the view that most students would not go on to a high school education. The educators endeavored to prepare students therein with the minimum of qualifications necessary for job holding. Academic standards and academic progress carried a lower priority. With the progression of years and the broadening of perspective more students advanced to high school education to the point where now it is the exception that one does not attain that level. Under these circumstances it was deemed necessary to prepare the student academically for high school and to adapt to a more relevant and dynamic curriculum, one which deals with the expanded horizons resulting from the vast changes in the social, political, economic and intellectual concepts and goals of this era. Thus in the intermediate schools the .curriculum planned innovates the studies of the humanities —literature, art, philosophy and religion; the study of family living- — -home economics, sociology, art, music, industrial arts, health education, consumer education and economics; a series of courses in the performing arts; typewriting beginning in the *436 fifth grade; foreign language in the fifth or sixth grade; and courses in fundamental skills, especially speaking and reading. In addition, the intermediate school is designed to help change the city school patterns of racial integration. With the incoming of the fifth and sixth grade students into the intermediate school, the students’ lesser maturity, learning ability, attention span and ability to adjust to a departmentalized program, create problems vastly different from those which arise with the more mature students in the seventh grade upwards in junior high school. Staffing of personnel in significant positions to be able to cope with these problems and the new curriculum is a major undertaking.
In sum, the intermediate school is a unique field of view in an experimental stage and is not a junior high school. Nor is it a junior high school as defined by the regulations of the Commissioner of Education and the by-laws of the Board of Education, which have been suspended in relation to experimentation with the intermediate schools. (See Gladstone v. Board of Educ. of City of N. Y., 26 A D 2d 838.)
The eligible list for principal of a junior high school arose, as previously stated, at a time when the intermediate school was not even planned by the Board of Education. The dates for the examination and the meeting of all the eligibility requirements for the junior high school principal license expired months prior to the putting in force of the new schools by the Board of Education’s resolution. It is thus plain that the applicants for junior high school principal could not have been evaluated as to qualifications for a school as yet unborn in the minds of its planners. In addition, the plan itself reveals valid grounds for distinction between the two positions. It follows that the junior high school list was not intended to be the eligible list for intermediate school principal.
Under subdivision 4 of section 100 of the by-laws of the Board of Education, regular appointments for vacant positions must be filled from appropriate eligible lists. An eligible list for intermediate school principal, eventually contemplated by thé Superintendents Committee on Intermediate Schools, has not as yet been promulgated. The Board of Education’s resolution of July 14, 1965 suspended the by-laws and authorized the making of “ such assignments of personnel as are required to accomplish the aforesaid program, including assignments of junior high school personnel ”. (Emphasis supplied.) The resolution did not require the Board of Education to make appointments exclusively from junior high school personnel. It merely permitted their assignment to the intermediate *437 schools. The resolution did not endow anyone with a claim of right to appointment. It left the Board of Education free to appoint as it deemed fit. The only limitations imposed upon it are contained in the regulations of the Commissioner of Education (8 NYCRR 80.2) and section 2590-j of the Education Law. Under the Commissioner’s regulations cited, all teachers, whether regular or not, must be licensed. Nothing contained therein refers to supervisors. Under the stated section of the Education Law, regular appointments of supervisory personnel must be from persons on qualifying eligible lists. It however makes no restriction with respect to appointments on an acting or temporary basis. Thus in the absence of a qualifying list for the intermediate school, temporary or acting appointments of supervisory personnel may be made either from the junior high school list or by “ such [other] assignments of personnel as are, required to accomplish the purposes of the aforesaid program, ’ ’ without regard to any list.
Turning to the petitioners’ assertion that a temporary appointment can be made only for six months and the provisions of the law upon which the claim is based, we read subdivision 2 of section 2573 of the Education Law. It provides “ Appointments shall be made from appropriate eligible lists to fill all existing vacancies not later than six months from the date of the existence of such vacancy, except that the board of education may defer such appointments until, the opening of school following the expiration of such six month period.” In the ordinary situation where a vacancy occurs, as, for example here, on April 1, 1970, the six-month period having expired on October 1,1970, the Board of Education may then defer the appointment until the opening of the school year in September, 1971. This section, however, is not applicable to the position of intermediate school principal, for, as heretofore noted, there is at present no “ appropriate ” eligible list, as such, to fill vacancies. As indicated above, the junior high school list is not the “ appropriate ” list for intermediate schools. At most it is an optional list.
Among the exhibits submitted in support of the respondents’ position is a summary of an independent research report sponsored jointly by the Board of Education of the City of New York and the New York State Education Department relating to the new curriculum activities of the intermediate schools, dated December 1969. It appears therefrom that adverse conditions in our school system have prevented the full implementation of this experiment that is necessary for a proper evaluation; and *438 it recommends that further experimentation be continued for at least another three years. Pertinent to note is one of its many findings that1 ‘ there was scarcely an area of administration and organization that did not present problems.”
It is through experimentation that the novel and complex duties required of the personnel of the intermediate schools will evolve. Continued experimentation with the programs of the intermediate schools, including the formulation of criteria for appointment of its principals, seems indicated. In such event the further opportunity to develop them must be allowed. This court will not at this crucial point impose upon those who bear the responsibility of implementation the rigidity which petitioners ask in the filling of these significant positions.
As was so aptly said by Judge Bbrgak in Matter of Council of Supervisory Assns. v. Board of Education (23 N Y 2d 458, 469): “ The experimentation which is the basis of this proceeding may not solve the problem. But it is not solved by rigid adherence to past techniques. The Legislature and the responsible education officers of the State and city have seen experimentation as a possibility of improving the education of children in slum areas. The court ought to give it a reasonable chance of success.”
The last of the petitioners’ contentions, that the designation of Mr. Huntley as acting principal violates the established policies of the Board of Education in filling temporary vacancies, is without merit. The resolution of the Board of Education establishing such policies provides that “any one” of the following may be designated:
“ a. A licensed appointed assistant principal, department chairman or subject supervisor
“ b. A licensed assistant principal, department chairman or supervisor who is on an eligible list but who has not as yet been appointed
“ c. A teacher who holds a state certificate for'the principal-ship of the school level indicated and who has completed a full year’s internship in supervision and/or administration in a recognized university, or who has served satisfactorily as a supervisor for at least one year.”
Mr. Huntley’s qualifications, set forth previously, meet the requirements of subdivision c and accordingly his designation as acting principal is proper.
The petition is dismissed in all respects and the stay is vacated.