Edward J. Greenfield, J.
This application for a temporary injunction in an article 78 proceeding to restrain respondents from permitting an allegedly unlicensed person to act as a public school principal represents yet another skirmish in the continuing war for control of the schools and the minds of the children. The participants all profess the noblest of motivations, and each ascribe to their adversaries the darkest and narrowest ends. The court, however, must make its decision based not upon its *549 own view of desirable policy, but within the circumscribed limits of what is legally permissible.
The factual pattern involved would appear to indicate the Board of Education and Community School Board No. 3 have gone to considerable lengths to achieve their objectives. The question is whether they have utilized existing laws and procedures properly or whether, as petitioner 'Council of Supervisory Associations contends, there has been a flagrant and transparent violation of the law. The facts are these:
On September 3, 1969, the then principal of elementary school No. 84 in Manhattan was transferred, creating a regular vacancy under section 2573 of the Education Law. A regular vacancy could be filled only by the assignment of an existing principal or the designation of someone on the list of eligibles for appointment.
There were at the time some 215 persons on the list of those eligible for appointment to the position of principal. The eligibles were apparently circularized by the Community School Board or its predecessor. After interviews with those interested in the principalship of public school No. 84, the school board declared that ‘ ‘ none was found qualified ’ ’. They then went beyond the existing list, and after further search came up with the recommendation of one Sidney Morison to fill the post.
Mr. Morison was not licensed under New York City procedures as an elementary school principal nor was he on any existing eligible list. He did hold a State certification as principal of a secondary school, and had prior supervisory experience in the mathematics department of a New York City junior high school. To accommodate the desires of the Community School Board, the Board of Education arranged to have one William N. Zimmerman, the principal of another school, who was then on medical leave, to be transferred to the position of principal- of public school No. 84, for payroll purposes only, it evidently being apparent to all that he would never actually serve in that capacity. The duly designated principal being on medical leave, the local board’s nominee, Mr. Morison, was appointed as acting principal, and continues to so serve. It is that service which petitioner seeks to enjoin, contending the community boards are restricted in their choice of principals to those on an éxisting eligible list or a transferee from another district.
There no longer is an existing eligible list. By statutory enactment all persons on the existing eligible list for elementary school principals were deemed appointed as of April 1, 1970, receiving the higher title and salary while awaiting assignment to vacancies which would arise thereafter. (Education Law, *550 § 2590-j, subd. 4, par. [e].) Petitioner alleges that 5 to 7 of them are now serving in District 3 as “ auxiliary principals ”— captains without a ship — while public school No. 84 is commanded by an irregular and unqualified captain.
The problem of filling educational positions — whether by so-called merit examinations or by special appointments which tend to by-pass such examinations — has cropped up with increasing frequency, with the claims on one side that such examinations are irrelevant to the qualities required and are discriminatory in effect, and the claims on the other side that they open appointments to abuse, favoritism, and mob pressure with merit as a minor consideration. The approach the courts should take in resolving this conflict was set forth by the Court of Appeals in Council of Supervisory Assns. v. Board of Educ. of City of N. Y. (23 N Y 2d 458 [1969]), which limited the scope of judicial review to the questions of statutory power to take the action, and whether it was taken arbitrarily. 4 4 The questions of wisdom, necessity and policy are for the board, not the court ” (p. 465). Reviewing courts were cautioned to view the by-passing of selection from eligible lists with some degree of tolerance, to afford to experimentation some reasonable chance of success (p. 469).
One of the methods adopted by the Board of Education and the local school boards to achieve greater flexibility is the device (and let us be candid and call it just that) of giving new names and titles to vacant positions — whether calling the effective executive supervisor of the school an 4 4 experimental school district principal ” as in the case before the Court of Appeals (supra), or denominating him an 44 acting principal ”, as here. Here the board has acted to designate an actual principal, albeit in name only. Thus, technically, no vacancy exists for the principal’s position, so that those who have passed the qualifying examination as principals have no standing to object that they should be designated, and as the person designated in the principal’s place during his sick leave is the 4 4 acting principal ’ ’.
The Board of Education has provided in its by-laws and policy pronouncements for classes of persons who could be appointed 4 4 acting principal ’ ’. They are :
(1) . Licensed and appointed assistant principals, department chairmen, or subject supervisors.
(2) Licensed assistant principals, department chairmen or supervisors, on an .eligible list but not yet appointed.
(3) A teacher holding a State certificate for a prineipalship, and who has completed a full year either in internship or actual service as a supervisor.
*551 Mr. Morison, who was chosen as “ acting principal ”, is in the latter category of eligibles. He was a teacher holding a State certificate for principal of secondary schools, which is convertible to include certification for the principalship of elementary schools, and he had previously served for one year in a supervisory capacity as acting chairman of the mathematics department of a junior high school.
Thus, it appears that in the steps taken to place Mr. Morison in actual charge of the operations and policies of public school No. 84, respondents have complied with the letter of the law. While petitioner contends that this is a transparent attempt to circumvent the true guiding spirit of the law and of the constitutional mandate of section 6 of article V of the State Constitution, I cannot find, in view of the Court of Appeals’ directive to accord a considerable degree of leeway to the experiments of the Board of Education, that there has been such a flagrant and arbitrary flouting of the law that a temporary injunction should issue.
Further, since the designation of Mr. Morison, all those on the list of eligibles have been given the rank and title of principal, so the only complaint petitioners can make on their behalf is that one of their number is being deprived of the assignment to head public school No. 84. There is a clear distinction, however, between eligibles having the first right to appointment, and their inherent right to assignments to any particular vacancy. Appointment gives them all the prerogatives of office except command. Assignment is still the function of the board. (See Matter of Van Heusen v. Board of Educ. of City of Schenectady, 26 A D 721 [1966]; Matter of Kropf v. Board of Educ. of City of N. Y., 34 Misc 2d 8, affd. 18 A D 2d 919 [1963]; and Matter of Munter v. Theobald, 225 N. Y. S. 2d 1008, affd. 17 A D 2d 854 [1962].)
Since there appears to be a more than Ample basis for denial of the application for a temporary injunction, this court need not deal at this time with other issues raised in the answering papers, such as the applicability of the collective bargaining agreement, laches, and exhaustion of administrative remedies. It should be noted, however, that during the pendency of this motion, several decisions came down which had a bearing on the issues in this case, one in particular dealing with some of the constitutional issues raised by the affirmative defense of the Community School Board. These decisions necessitated a re-examination of some of the court’s initial conclusions, and the attack on the fundamental validity of the merit examination caused this *552 court to hold the entire matter in abeyance until a decision was forthcoming.
The first was the decision of Mr. Justice Pino, in Kings County, denying an application for a temporary injunction to compel the appointment of a permanent principal from an existing list of eligibles, and to oust the acting principal of Benjamin Franklin High School, the court ruling that if the appointing authorities (the central and local school boards) in good faith were unable to find any person especially qualified for the assignment and willing to accept, the existing list would be deemed exhausted, and the acting principal continued pending promulgation of a new eligible list. (Matter of Council of Supervisory Assns., N. Y. L. J., Dec. 29, 1970, p. 16, col. 7.)
Shortly thereafter, the same Judge held that in the absence of a current eligible list, appointments could properly be made on an acting or temporary basis, and that an acting principal holding a State certification, could have his certificate converted for any administrative supervisory position. (Matter of Council of Supervisory Assns. v. Board of Educ. of City of N. Y., 65 Misc 2d 430.)
Then, in New York County, Mr. Justice Cold dismissed an article 78 proceeding to restrain the Board of Education from continuing in office the acting principal of public school No. 59, on the ground that all persons on the eligible list had already been appointed as auxiliary principals pursuant to paragraph (e) of subdivision 4 of section 2590-j of the Education Law, and that assignment to a particular vacancy was a matter left to the Community School Board. (Matter of Council of Supervisory Assns., N. Y. L. J., Feb. 5,1971, p. 18, col. 1.)
However, the Appellate Division of the Third Department seemed to have called for a stricter approach to the constitutional requirements for appointment and promotion by competitive examination in Matter of Board of Educ. of City of N. Y. v. Nyquist (37 A D 2d 642). There a person designated as acting principal of an elementary school for many years was annually reassigned to that position, despite the fact that she had failed the competitive examination for principal six times. When the Commissioner of Education directed that she be appointed as principal nunc pro tunc, the Appellate Division ruled that his decision contravened the Constitution and the Education Law, which required all supervisory appointees to be appointed and assigned based solely on the outcome of the competitive examinations.
The validity and continued useability of the competitive examinations for supervisory positions was being attacked at that *553 very time in the Federal courts on constitutional grounds. Accordingly, since the decision in that case would profoundly affect the current situation, and Mr. Morison had already publicly announced that under no circumstances would he take the examination for elementary school principal, this court held its decision in the instant motion in abeyance, pending the outcome of the Federal case.
That case, Chance v. Board of Examiners (in U. S. Dist. Ct., S. D. N. Y., 70 Civ. 4141), brought by two acting principals of New York City elementary schools, like Mr. Morison holding State certification but not on any eligible list, was decided b Judge Walter, Mansfield in mid-July of 1971. In a compr sive 48-page opinion, a copy of which he kindly furnished to court, Judge Mansfield ruled that the current examinations i.. testing procedures for the licensing of supervisory personnel in the New York City public schools were de facto discriminatory, irrelevant to actual capacity to perform, and unworkable. He therefore issued a preliminary injunction to restrain the holding of further objectionable examinations or promulgating eligible lists based thereon, in order to preserve the status quo.
Hnder those circumstances, and for the reasons previously described, this court must deny the petitioners’ application for a temporary injunction, and likewise leave matters in status quo, pending a full-scale trial of the issues, or further appellate review.