In the Matter of SOCIAL INVESTIGATOR ELIGIBLES ASSOCIATION, Respondent, against FRANK J. TAYLOR, as Comptroller of the City of New York, et al., Appellants.

(Argued June 3, 1935; decided July 11, 1935.)

234

*Paul Windels, Corporation Counsel (William C. Chanler, Paxton Blair* and *Edmund L. Palmieri* of counsel), for appellants. The services of the persons complained of by the petitioner are legally utilized. (New York Constitution, art. 5, § 6.)

*Albert De Roode* for respondent. A mandamus order directing discontinuance of the performance of an illegal practice or act by public officials is proper. (*Matter of Reynolds,* 202 N. Y. 430; *People ex rel. Lempps* v. *Voorhis,* 178 N. Y. Supp. 516; 185 App. Div. 939; 224 N. Y. 633; *People ex rel. Conklin* v. *Boyle,* 98 Misc. Rep. 364; 178 App. Div. 908; *People ex rel. Daley* v. *Rice,* 129 N. Y. 449; *People ex rel. Russell* v. *Board of Canvassers,* 46 Hun, 390; *Matter of Lewis* v. *Board of Parole,* 220 N. Y. 8; *Oren* v. *Secretary of State,* 171 Mich. 590; *Levering* v. *Board of Supervisors,* 112 Atl. Rep. 301; *People ex rel. Akin* v. *Loeffler,* 175 Ill. 585; *Matter of McAdams,* 260 N. Y. 559; *Matter of Plattsburg Pub. Co.* v. *Looby,* 124 Misc. Rep. 761.)

LOUGHRAN, J. On December 8, 1932, the Municipal Civil Service Commission of the city of New York, by open competitive examination, established a list of persons

eligible for appointment to the position of " Social Investigator — To make field investigation of persons applying for charitable relief from the city of New York." The petitioner is an unincorporated association consisting of two hundred and fifty eligibles now on that list. It alleges that two hundred persons employed by the Department of Public Welfare of the city as social investigators have neither passed nor been exempted from civil service examination, and receive compensation out of funds deposited to the credit of the city. The petition demands that the defendant Commissioner of Public Welfare of the city be directed forthwith to desist from utilizing the services as social investigator of any person not selected or appointed in accordance with the Civil Service Law (Cons. Laws. ch. 7) and rules, and that the defendant Comptroller of the city be directed not to make payment for such services of any person not so selected or appointed.

No member of the petitioner has ever been employed by the city. (Cf. *Matter of Danker* v. *Department of Health*, 266 N. Y. 365.) Concededly lack of appropriation prevents any additional appointment from the civil service eligible list upon which the names of its members appear.

The answer of the defendant Commissioner of Public Welfare is that the Works Division of the Emergency Relief Bureau of the city, the local agency then administering unemployment relief (Laws of 1931, ch. 798, § 7), sent to his department the persons mentioned in the petition with a request that the department avail itself of their services; that " the services of these persons had been utilized in connection with phases of the work of our regular force of civil service investigators;" and that " such relief is paid from moneys provided in part by the City, the State and the Federal Government." No claim is made that this course was followed otherwise than in good faith.

The Appellate Division has affirmed a peremptory order of mandamus granted by the Special Term in accordance with the prayer of the petition. Because of the importance of the conflict of interests presented, we allowed this appeal by the defendants. For the same reason we now put aside an argument that the status of the petitioner does not entitle it to a hearing on the merits. (Cf. *Matter of Jaffe* v. *Board of Education*, 265 N. Y. 160.)

" Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." (Const. art. V, § 6.) Attachment to the principle of this command of the Constitution constrained the courts below to proscribe the practice challenged by the petitioner. We have come to the conclusion that nothing shown by this record is offensive to that principle or calls for its vindication.

Since September 23, 1931, it has been the declared public policy of the State that the hardships and suffering caused by unemployment of a considerable number of its inhabitants is a condition that requires the furnishing of public aid to individuals as a measure for the public health and safety occasioned by an existing emergency. (Laws of 1931, ch. 798; Laws of 1932, ch. 567; Laws of 1933, chs. 2, 9, 34, 69, 259; Laws of 1934, chs. 15, 65; Laws of 1935, ch. 25.) Pursuant to this legislation the services of the persons mentioned in the petition are used by the Department of Public Welfare of the city of New York. As persons who are unemployed or whose employment is inadequate to provide the necessaries of life they receive " work relief," *i. e.*, wages from moneys specifically appropriated or contributed for that purpose, for services or labor in work undertaken by the city independently of work under a contract or for which an

annual appropriation has been made. For such employment they have been selected on the basis of their needs as determined by investigation. The statute (Laws of 1931, ch. 798) provides that no person so employed shall be subject to the provisions of the Civil Service Law.

This procedure (admittedly followed in good faith) does not, we think, trench upon the right of any member of the petitioner under article V, section 6, of the Constitution. The command of that section is addressed to conventional and stable duties of the functionaries of civil government. Its aim was to supplant by a merit system a spoils system of office holding. (*Rogers* v. *Common Council of Buffalo*, 123 N. Y. 173; *People ex rel. Sweet* v. *Lyman*, 157 N. Y. 368, 375.) When this policy was inaugurated there was no purpose to check " an expanding consciousness in the modern state that relief against unemployment, both after the event and before it, is part of the state's function " (*People* v. *Crane*, 214 N. Y. 154, 165.) That consciousness is not without attestation in the Constitution (Art. VIII, § 10). The fundamental law is to be read as a whole and every relevant provision of statute is to be construed, if possible, so as to give effect to every other provision. (*People ex rel. McClelland* v. *Roberts*, 148 N. Y. 360, 367; *Matter of Danker* v. *Department of Health*, *supra*, 369.)

No person mentioned in the petition has received appointment to any office or position of trust or employment in the civil service of the State or of the city of New York in the sense of the Constitution or of the Civil Service Law. (*People ex rel. Balcom* v. *Mosher*, 163 N. Y. 32, 39–41.) The positions in which they are said to be employed never actually existed. (Cf. *Matter of Danker* v. *Department of Health*, *supra*, 370.) These persons are among those selected by a unit of the Temporary Emergency Relief Administration for the bounty of work needed to sustain life. At the request of that body their services have been used in conformity

with the statutory machinery devised for warfare with unemployment. It may be, as the petitioner so strongly maintains, that this must stop somewhere. We decide only the case before us. No clear and substantial conflict between the practice here followed under the Emergency Relief Act and the constitutional provision invoked by the petitioner justifies the interference of the courts below. (*People* v. *Gillson*, 109 N. Y. 389, 397, 398.)

The order of the Appellate Division and that of the Special Term should be reversed, and the proceeding dismissed, without costs.

LEHMAN, O'BRIEN, HUBBS, CROUCH and FINCH, JJ., concur; CRANE, Ch. J., dissents.

Orders reversed, etc.