Samuel J. Silverman, J.
These two article 78 proceedings will be considered together.
Petitioners in both proceedings attack section 164 of the Social Services Law (the “work relief” statute) as amended in 1971, and the actions of the State and New York City officers and agencies under it.
*268 By order of Mr. Justice Culkif, the proceedings have heen dismissed as against the State agencies and officials; and he declared that petitioners were not required to exhaust their administrative remedies (including a “fair hearing ” before the State Department of Social Services) as a precondition to these proceedings.
The basic subdivisions of section 164 provide:
“1. As hereinafter provided, employable persons receiving home relief shall be required to perform such work as shall be assigned to them by the social services official furnishing such home relief * * *
“ 2. (a) The social services official of a county, city or town which is responsible for providing home relief shall provide for the establishment of public work projects for the assignment of employable persons in receipt of home relief to perform work for such county, city or town or for the state, and the head of any department * * * may request that such persons be assigned to his unit. * * *
“(b) The social .services official * * * shall thereupon assign such persons in receipt of home relief who, in his judgment, are able to perform the work indicated, provided he is satisfied that such persons will not be used to replace, or to perform any work ordinarily and actually performed by, regular employees of any department * * *
“ 3. * * * (b) The number of days of work to be given each person shall be determined by the amount of the budget deficit of the recipient and his family computed on local home relief budget schedules. No person shall be required to work for more than the number of days necessary to earn such amount or to be paid more than such amount. No person shall be required to work more than eight hours in a day or more than forty hours in a week.
“4. Any person who refuses to report for or to perform work to which he has been assigned * * * shall thereupon become ineligible for home relief.”
The 1971 amendments to the statute, among other things, substituted the phrase “shall be required” for “may be required” in subdivision 1, and added the words “ and actually” in paragraph (b) of subdivision 2.
Petitioners in the Grotbaum case are regular civil service employees, and a union representing them. Petitioners in the Ballentine case are home relief recipients who are or were performing work for the City of New York under the statute. The Grotbaum petitioners contend in essence that the statute *269 is a violation of the civil service provisions of section 6 of article V of the State Constitution, i.e.: 11 Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ’
All petitioners contend that home relief recipients are being employed to perform work ordinarily and actually performed by regular employees, and at a lower salary, without the “fringe” benefits enjoyed by regular employees, e.g., vacation and sick pay, pension benefits, holidays, etc. From this the Grotbaum petitioners conclude that the “ employment ” should be terminated unless and until filled by appointees from regular competitive civil service lists. The Ballentine petitioners conclude that they are entitled to receive all the same benefits — salary, fringe benefits, etc.— as regular civil service employees, and that the present situation constitutes “ peonage ” in violation of the Thirteenth Amendment.
There is a preliminary question as to the standing of petitioners to raise some or any of these issues. But, among all these different petitioners, I think some have standing to raise most of these issues, and I shall consider the merits.
As to the claim that the statute is a violation of the constitutional requirement, that “ appointments and promotions in the civil service * * * shall be made according to merit and fitness ” to be ascertained as far as practicable by competitive examination, I hold that the statute does not violate this constitutional provision, for the reason that the assignment of these home relief recipients to work does not constitute “appointments and promotions” in the civil service.
Matter of Social Investigator Eligibles Assn. v. Taylor (268 N. Y. 233 [1935]) is, I think, decisive of the point. There an association of civil service employees and eligibles on civil service lists attacked employment of persons on work relief as a violation of the constitutional provision. The Court of Appeals sustained .the employment, saying (p. 237):
“ This procedure (admittedly followed in good faith) does not, we think, trench upon the right of any member of the petitioner under article V, section 6, of the Constitution. The command of that section is addressed to conventional and stable duties of the functionaries of civil government. Its aim was to supplant by a merit system a spoils system of office holding. * * * When this policy was inaugurated *270 there was no purpose to check ‘ an expanding consciousness in the modern state that relief against unemployment, both after the event and before it, is part of the state’s function’ * * *
“ No person mentioned in the petition has received appointment to any office or position of trust or employment in the civil service of the State or of the city of New York in the sense of the Constitution or of the Civil Service Law.”
In the present case, in addition, these home relief recipients do not even receive a salary; they get the same relief payments, no matter how many or how few the hours they work, or what kind of work they do; they get no additional money for their work (except carfare and lunch money). The nature of their work merely determines the maximum number of hours they must work as a condition of continuing to receive home relief.
The legal situation is not altered because the work they do is similar to that done by civil service employees. Considering the innumerable kinds of work done by civil service employees — doctors, lawyers, engineers, cleaning people, cooks, stenographers, automobile mechanics and chauffeurs, seamen, etc., etc., etc. — the whole concept of work relief by doing work for public agencies would have no meaning if the work had to be of a kind that civil service employees do not do. And it surely could not be meaningful work if it is work which the public agencies do not need.
In Matter of Social Investigator Eligibles Assn. v. Taylor (268 N. Y. 233, supra), the work relief recipients were employed as social investigators, as were many civil service employees.
The more serious question presented is whether the work these relief recipients do is work ‘ ‘ ordinarily and actually performed by, regular employees ”. (Social Services Law, § 164, subd. 2, par. [b].) At a minimum this means that no civil service employee shall be dismissed to make room for such relief recipients. (Cf. Matter of Danker v. Department of Health of City of N. Y., 266 N. Y. 365 [1935].) There appears to be no contention that this happened.
I do not think the statute means that relief recipients cannot be used to do the same kind of work as regular employees are doing, to supplement that work and to supplement manpower shortages due among other things to budgetary restrictions: (a) The 1971 amendment changed the phrase “ ordinarily performed by, regular employees ” to “ ordinarily and actually performed by, regular employees ”, (b) There are *271 almost no kinds of work that are not ordinarily performed by regular civil service employees, (c) In Matter of Social Investigator Eligibles Assn. v. Taylor (268 N. Y. 233, supra), as I have said, the work done by relief recipients was the same as that done by civil service employees.
Nor does it matter that one reason that civil 'Service employees are not employed in greater numbers is budgetary restrictions. Thus in Matter of Social Investigator Eligibles Assn. v. Taylor (supra, p. 235), the court said: “ Ooncededly lack of appropriations prevents any additional appointment from the civil service eligible list upon which the names of its members appear.”
I note that it is not even suggested in the case at bar that the budgetary restrictions, or the current job freeze of the City of New York, are in any way the result of these work relief statutes.
It follows that the Grotbaum petition must be dismissed.
I turn now to the Ballentine petitioners’ claims:
The argument that the status of these home relief recipients is peonage is quite fallacious. The precise point — with respect to this very statute among others — was passed upon by a three-Judge United States District Court in Dublino v. New York State Dept. of Social Servs. (348 F. Supp. 290 [1972]). As to the argument that the statute and work rules impose a form of involuntary servitude, the court said (p. 297): “ We find the argument unpersuasive and without merit in all respects.”
Interpreting the Federal antipeonage statute, the United States Court of Appeals for the Second Circuit, stated that peonage was a form of involuntary servitude; and then Judge Friendly defined involuntary servitude as follows (United States v. Shackney, 333 F. 2d 475, 486, 487): “ But a holding in involuntary servitude means to us action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement, in Mr. Justice Harlan’s language, ‘ superior and overpowering force, constantly present and threatening ’ * * * not a situation where the servant knows he has a choice between continued service and freedom, even if the master has led him to believe that the choice may entail consequences that are exceedingly bad. * * * There must be ‘ law or force ’ that ‘ compels performance or a continuance of the service ’ ”.
However difficult the loss of home relief is, a person is not held in a state of peonage when the only sanction for his refus *272 ing to work is that he will hot receive payments currently. That may be a form of mankind’s immemorial bondage of bread; but it is not peonage.
Petitioners in the Ballentine case contend that they are entitled to all the benefits of civil service employees generally. But the same considerations that make the constitutional and statutory limitations on appointment of civil service employees inapplicable to these petitioners also make other statutory provisions granting various benefits to civil service employees inapplicable to these petitioners. They are not civil service employees. Their rights and obligations are prescribed by the statutes and regulations applicable to home relief recipients who are subject to the work relief statute and rules.
The regulations promulgated by the State Commissioner of Social Services provide (18 NYCBB 385.10 [e] [2]) that “ Payment credits for work shall be made at the State minimum wage or, if higher, at the wage paid to local government employees in the classified services for comparable work ”.
Bespondent city says it is complying with this provision. Petitioners say it is not. An issue of fact is presented, which must be tried.
However, there are a cumulative total of tiver 21,000 such - employees. It is neither possible, nor the court’s duty, for the court to conduct a wide ranging inquiry to ascertain the facts as to all these 21,000 employees. As reaffirmed in St. Clair v. Yonkers Raceway (13 N Y 2d 72, 76 [1963]): “ ‘ Jurisdiction has never been directly conferred upon the courts to supervise the acts of other departments of government ’. ’ ’
Both ‘ ‘ the constitutional divisions of authority in our system of Government ” (ibid., p. 77) and practical considerations require that the court limit itself to manageable situations sufficient to enable it to decide the case before it and the grievances of the parties before it. With respect to the issue of fact as to which I have directed a trial, while it may be that some fact situations apply to definable, manageable groups of employees, this does not appear from the papers; and for the most part the case of each aggrieved person must rest on its own facts and requires an investigation of the facts peculiar and applicable to that person.
Accordingly, a hearing will be directed on the issue of whether the named petitioners in the Ballentine case are being Credited at rates that are in accordance with the quoted regulation.
Two of those petitioners — Ballentine and Velez — are no longer assigned to any public work project. However, it is *273 claimed that they may be entitled to back ‘ ‘ pay ” — or perhaps more credit against home relief or I suppose continued home relief if their home relief was terminated. If petitioners wish to press the case of these two petitioners, they may have the above issue tried as to them, without prejudice however to any appropriate rulings of law or fact by the Trial Judge on a fuller consideration of the effect of their no longer being assigned to a work project.
As to the remaining petitioner in the Ballentine case, Carwin, a hearing must be held on the issue stated (though here too I do not determine what form of relief he will be entitled to if the city has not credited him at the proper rate).
In all other respects, the Ballentine petition is dismissed.
The Gotbaum petition is dismissed.