Edward J. Greenfield, J.
Some of the most difficult problems which are presented for judicial resolution involve a head-on collision of two socially desirable but conflicting objectives. In this case such a problem is presented by the conflict between constitutional provisions for a merit system of civil service employment, and the desire to set up a humane and enlightened welfare and relief system to provide employment for recipients.
This is an article 78 proceeding, in which petitioners, a union official, civil service employees, and persons on civil service •eligibility lists sue to enjoin the implementation of the Work Relief Employment Program (hereinafter WREP), a demonstration project planned and administered by respondent Sugar-man, as Human Rights Administrator of the City of New York. The program was evolved pursuant to chapter 603 of the Laws of 1972 to use home relief funds to create paid employment opportunities in public or nonprofit private agencies. The WREP plan as formulated by the respondents, has been approved by the State Commissioner of Social Services. Essentially, it is a demonstration project of one year’s duration (but renewable for additional years), which provides for the employment of recipients of home relief by requiring their assignment to various city governmental agencies. Pursuant to the plan a number of WREP titles have been created which are comparable, so far as job specifications and qualifications are concerned, with a number of positions in the competitive class of civil service. The recipients appear on the payrolls of the various governmental agencies and have the right to certain fringe benefits, but they do not acquire full civil service status.
Petitioners, attack the WREP program as violative of section 6 of article V of the New York State Constitution which provides: “ Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive ”.
The work relief program had its inception in 1971, when the Governor declared in a special message to the State Legislature that the welfare program was going to be restructured “ to give greater opportunity and incentive to the individual to achieve independence, self-sufficiency and human dignity.” This, he declared, would require that the government provide useful *829 work in community services and ‘ ‘ the maximum feasible transfer of the able-bodied from welfare rolls to payrolls ” (N. Y. Legis. Ann., 1970, pp. 526-528). Accordingly, section 164 of the Social Services Law was amended to require that employable recipients of home relief were to be assigned to perform work in public agencies. To implement this legislation, New York City set up a program known as the Public Work Project (PWP). Participants in the program continued to receive a welfare check, which they were to work off at a prescribed hourly rate of pay.
Because the PWP program appeared to be a “make work ” approach, and there was no minimum work requirement, at the suggestion of the city, the Legislature enacted chapter 603 of the Laws of 1972 under which the program now attacked was formulated. The PWP program was replaced by the Work Belief Employment Program (WREP). Under the WREP program, recipients were to get not a welfare check but a wage payment from the agencies for which they worked. Funds appropriated for relief purposes were transferred to those agencies to meet the payroll. Participants were required to work no less than one-half time and up to 40 hours. They were to be evaluated for training and employability. They were to receive certain fringe benefits over and above their direct wages and they were eligible to bargain collectively.
Petitioners assert that the WREP program is a subterfuge to evade the constitutional requirements of competitive civil service examinations.
This attack would appear to question the constitutionality of chapter 603 of the Laws of 1972 from which the program derives. Bespondents have moved to dismiss the petition for failure to state a cause of action and for lack of standing to sue. The latter point can be dealt with very briefly. This court finds that the executive director of the principal civil service union in New York City, existing civil service employees and persons on eligible lists have adequate standing to sue (see Matter of Ballentine v. Sugarman, 74 Misc 2d 267, 269).
In dealing with the merits of this controversy, there are three previously decided cases which must be dealt with. The first, Matter of Social Investigator Eligibles Assn. v. Taylor (268 N. Y. 233), dealt with the relief program set up during the depression of the 1930’s. The Temporary Emergency Belief Administration was set up to provide money for necessaries and to relieve the suffering caused by unemployment through a work relief program. As here, the program was attacked by *830 civil service eligibles as violating the constitutional mandate of section 6 of article V that all appointments and promotions in the civil service should be based on merit and competitive examinations. The Court of Appeals held that inasmuch as the relief recipients were not receiving any appointments in civil service, even though their work paralleled that of civil service employees, there was no conflict with the Constitution. Employment which was provided as a matter of work relief was thus declared to be beyond the scope of competitive civil service examinations.
In 1973, section 164 of the Social Services Law upon which the P WP program was based was attacked by Victor Gotbaum, the same petitioner as in this action and by other civil service - personnel. This court, in Matter of Ballentine v. Sugarman, and Gotbaum v. Rockefeller (74 Misc 2d 267, affd. sub nom. Gotbaum v. Lindsay, 43 A D 2d 815, mot. to dismiss app. granted 34 N Y 2d 667 [Silverman, J.]) dismissed the attack on the constitutionality of the program. Belying upon the Taylor case (supra), Mr. Justice Silverman held that the assignment of these home relief recipients to employment comparable to that of civil service employees did not constitute an appointment or promotion in the civil service.
The third case is that of Matter of Maye v. Lindsay (69 Misc 2d 276 [Silverman, J.]), revd. 41 A D 2d 127, revd. on opn. at Spec. Term 33 N Y 2d 552). In that case, a program establishing positions comparable to civil service positions under the model cities program was invalidated. The basis of that invalidation is not controlling here however. In that case, permanent competitive civil service positions for New York City were created under a Federal funding arrangement to provide employment for residents of designated model cities areas. The basis upon which this program was invalidated was that it was restricted only to residents of certain designated areas of the city, and such a restriction was held to be contrary to the constitutional directive that appointments and promotions in the civil service are to be made according to merit and fitness. The decision in the Maye case is not applicable here. Under the model cities program, employment through competitive but restricted examination was to lead to permanent civil service status and eligibility for promotion examination. The only basis for participation in the program was residence in a selected area. Under the WREP program there is no residential restriction, there is no civil service status, and the only persons eligible are those already found eligible for welfare payments.
*831 It would appear that ¡the rulings in the Taylor and Gotbaum cases (supra), are controlling. The WREP program does not appear to be a subterfuge device to evade competitive civil service examinations merely by setting up differing job titles for the same civil service work. WREP participants acquire no civil service status. They have no tenure. They are temporary employees. They are not eligible for promotional examination. They may be in civil service only by taking the regular examination. There is no true employer-employee relationship with the agencies where they work. Their wages come not from budgetary allocations to the respective departments but from relief funds. There thus appears to be no danger that an extralegal and cognate system of government employment will be set up to evade the principle of merit and to create a new spoils system. There is no indication whatever that employment of any of these persons on the welfare rolls will reduce the budgetary allocation for the number of positions available to be filled through regular civil service channels.
In so ruling, the court is mindful of the statement by the . Court of Appeals in Council of Supervisory Assn. of Public Schools of N. Y. City v. Board of Educ. of City of N. Y. (23 N Y 2d 458, 469). The court there urged that experimental programs which are not palpable devices for evasion of civil service requirements should be given a reasonable chance of success and should be viewed sensibly against the needs and requirements of emergency or special situations. Instructive, if not entirely analogous on this point is the recent decision of the Court of Appeals in Matter of Taylor v. Sise (33 N Y 2d 357), where it was held constitutionally permissible to create additional positions for appointed Judges of the Court of Claims, who would sit in the Supreme Court by assignment despite the constitutional requirement that Justices of the Supreme Court be elected by the people for a 14-year term. “ Emergency ” and “ temporary ” were the key criteria warranting what was charged to be bypassing the Constitution.
A legislative policy which reflects a humane concern for developing meaningful work experience for relief recipients and which provides incentives for employment rather than for subsistence on a “ dole ”, is not to be discarded unless in clear conflict with constitutional imperatives.
This court therefore concludes that chapter 603 of the Laws of 1972 is constitutional and that the regulations propounded thereunder and the WREP program which was formulated to implement those provisions does not conflict with the Constitu *832 tion and the Civil Service Law. Accordingly, this court finds that petitioners have failed to state a cause of action, and the respondents’ motion to dismiss the petition is granted.