OPINION OF THE COURT
 

 Chief Judge Cooke.
 

 It is held here that, for purposes of the salary computation provisions in the collective bargaining agreement, civil service employees of Nassau County may be credited with their previous service for the county as participants in a Federally funded employment program.
 

 This action arises out of a dispute between plaintiff Nassau Chapter of the Civil Service Employees Association, Inc. (CSEA), and defendant County of Nassau over the application of the salary provisions of their collective bargaining agreement to those employees of the county who obtained civil service positions after January 1,1977 but who prior to that date held Federally funded positions with the county under the Comprehensive Employment and Training Act of 1973 (CETA) (US Code, tit 29, § 801
 
 et seq.)
 

 [1]
 

 Under the contract, both parties agreed “that the [incremental graded salary plans] previously and currently in existence and affecting various employees * * * shall be
 
 *562
 
 amended so as to provide a continuance of said plans for those employees included therein whose service commenced no later than December 31, 1976. All new employees entering County service on or after January 1, 1977, shall not receive the benefits of said Graded Salary Plan but shall be included in the newly created ‘Non-Incremental Graded Salary Plan’ ”. When the county placed the former CETA workers in the nonincremental salary plan following their civil service appointment, CSEA brought this action on behalf of the workers for a declaration that county employment commenced when the workers initially were placed in CETA-funded positions, and thus were entitled to placement in the incremental salary plan.
 

 The facts were stipulated. CSEA is the certified bargaining representative of individuals included in the negotiating unit, defined in the collective bargaining agreement by reference to the Public Employment Relations Board Certification of Representative. The certification defines the unit as “all Nassau County employees”, excluding certain job titles not relevant here. The individuals occupying CETA-funded positions were permitted to join CSEA as union members and the county deducted the bi-weekly dues for CSEA. Agency shop deductions were also made and the funds forwarded to CSEA.
 

 Prior to January 1, 1977, and continuing thereafter, individuals were hired and employed pursuant to the CETA legislation
 
 [2]
 
 to perform work for the county in job titles included in the negotiating unit. These individuals were hired at step one of an appropriate labor grade under the incremental graded salary plan and received annual salary increments. Funding for these positions came solely from the Federal Government. However, the individuals were paid by county check, supervised by county employees, given county identification cards, accorded sick leave, vacation leave, holidays, personal leave, bereavement days and the benefit of all other terms and conditions of employment included in the agreements between CSEA and the county in
 
 *563
 
 effect during the time they worked for the county, except that they were excluded from the New York State Employees Retirement System. While holding CETA-funded positions, the individuals accumulated vacation and sick leave. When the individuals secured civil service positions after January 1, 1977, the county placed them in the first salary grade under the nonincremental salary plan, although accrued leave time was left standing to the employees’ credit.
 

 Based upon these facts and. the terms of Federal statutes and regulations, Supreme Court found that the workers come within the contract definition of employees and thus are entitled to continued participation in the incremental graded salary plan. On appeal to the Appellate Division, that court reversed on the law. The Appellate Division agreed that, although not civil service employees, the CETA workers were in the employ of the county. It nonetheless determined that, for purposes of the collective bargaining agreement, commencement of county service did not begin until civil service status was obtained. We do not agree.
 

 The collective bargaining agreement at issue provides simply and unambiguously that the incremental graded salary plan shall be continued for those employees who commenced service with the county on or before December 31, 1976. The questions presented are whether those working by virtue of the CETA program were employees of the county during their CETA tenure and whether the contract provision applies only to those employees who commenced service with the county in a permanent civil service position prior to the cutoff date.
 

 The record amply supports the trial court’s finding, not disturbed by the Appellate Division, that those persons providing service to the county under the CETA program were employees of the county. Although the Federal Government provided funding for the CETA positions, salaries were paid through county accounts, the county had the power to hire and fire the CETA workers and the county exercised direct control and supervision over their work. That these factors are sufficient to establish an employment relationship is well settled (see
 
 Matter of Board of Educ. v Ny
 
 
 *564
 

 quist,
 
 45 NY2d 975, revg on dissenting opn at 59 AD2d 79-81;
 
 Matter of Morton,
 
 284 NY 167). Nor does the county seriously dispute that its relationship with the CETA workers had the indicia of employment. Under the circumstances presented, we find no basis for disturbing the determination that the workers here were county employees during the period they held CETA-funded positions.
 

 The remaining question is whether, given the existence of an employment relationship from the commencement of service for the county, these workers are entitled to benefit from the provision in the collective bargaining agreement continuing the incremental graded salary plan for employees commencing county service prior to December 31, 1976.
 

 The collective bargaining agreement defines an “employee” as an individual who is “in the negotiating unit”,
 
 i.e.,
 
 all county employees in job titles specified in the PERB Certification of Representative. There is no dispute that the county employees here both before and after 1977 were in job titles covered by the certification. They also were subject to the same employer control as other employees of the county. Additionally, pursuant to Federal mandate, persons holding CETA-funded positions receive the same benefits and working conditions as other employees similarly employed (see US Code tit 29, § 824, subd [k]). It is, therefore, appropriate to recognize the community of interest between the two groups of workers and the right of the CETA workers to be represented by the certified bargaining representative of the other employees (e.g.,
 
 Village of Nassau [Nassau Police Officers’ Assoc.],
 
 14 PERB, par 14-4022;
 
 Catholic Community Servs., Newark, N. J. & Dist. 1199-J, Hosp. & Health Care Employees,
 
 254 NLRB No. 90). Indeed, the county itself has recognized CSEA’s status as representative of the CETA workers, deducting union dues or agency shop fees from their salaries for CSEA.
 

 It being established at the trial level that CETA workers are as a factual matter county employees and hold covered job titles, it follows that they are “in the negotiating unit” and thus “employees” under the collective bargaining agree
 
 *565
 
 ment. And, once it is determined that the workers are covered by the agreement and that they commenced service in the county’s employ prior to December 31, 1976, there is no basis in the language of the agreement upon which to hold inapplicable to these workers the provision continuing the incremental graded salary plan.
 

 Contrary to the county’s argument, whether persons employed in CETA-funded positions are to be classified as “temporary” employees is not determinative, for the contract provision at issue makes no such distinction. Nor can the county maintain that persons occupying CETA-funded positions do not derive their employment benefits from the collective bargaining agreements between CSEA and the county. It is true that, as a condition of Federal funding, CETA employees in public service employment must receive the same benefits and working conditions as other employees (US Code, tit 29, § 824, subd [k]). This condition, however, does not translate into the source of benefits for CETA employees. The county hired them, albeit under the Federally imposed conditions, and it is the collective bargaining agreement between the representative union and the county that defines the benefits to which CETA employees are entitled.
 

 Similarly unpersuasive is the county’s argument that either State or Federal law is violated by recognizing the applicability of the incremental plan to civil service employees who formerly occupied CETA-funded positions. It has long been recognized that appointment to a position created as part of a work-relief program, which does not require compliance with civil service eligibility provisions, does not contravene the State constitutional mandate that appointments to civil service be based on merit and fitness (NY Const, art V, § 6). This is so, at least in part, because in such circumstances there has been no appointment to the civil service, although the functions performed parallel those of appointees; the employment is in response to an emergency situation; and there has been no demonstrable adverse impact on civil servants (see
 
 Matter of Social Investigator Eligibles Assn. v Taylor,
 
 268 NY 233;
 
 Papa v Ravo,
 
 70 AD2d 59).
 

 
 *566
 
 Under the Federal scheme, civil service appointees may not be adversely affected by employment of persons in CETA-funded positions. They may not be laid off, discharged or replaced by CETA workers, or be denied promotion opportunities or other employment benefits because of the CETA-funded positions (see US Code, tit 29, § 824, subd [c], par [1]; subd [d]). Additionally, CETA-funded jobs must be those which would not have existed but for the financial assistance provided (see US Code, tit 29, § 823, subd [g], par [1], cl [B]). Given these safeguards, it is evident that the initial hiring for CETA-funded positions did not violate New York’s merit-based civil service appointment scheme. Nor did the subsequent appointments of these employees, following compliance with the civil service eligibility provisions, do violence to any policy of this State. There simply has been no showing that a civil service employee’s entitlement to a salary based on total service with the county pursuant to a collective bargaining agreement contravenes the laws of the State (cf.
 
 Matter of Board of Educ. v Nyquist,
 
 45 NY2d 975,
 
 supra
 
 [time spent in CETA-funded teaching position credited toward tenure]).
 

 Finally, we perceive no conflict between the Federal scheme and the decision to credit time in the CETA-funded position for purposes of calculating salary under the collective bargaining agreement. There has been no demonstration that crediting duly appointed civil service employees with the CETA time for salary purposes benefits a CETA employee at the expense or to the disadvantage of other employees. No employee has been displaced by or been denied employment benefits because of an employee in a CETA-funded position. There simply is no Federal statutory proscription against crediting such an employee with his or her employment experience under CETA (see
 
 Matter of Board of Edue. v Nyquist,
 
 45 NY2d 975,
 
 supra).
 

 [3]
 

 The congressional purpose underlying the comprehensive Federal assistance programs in the employment area is
 
 *567
 
 expressly stated to include “provid [ing] job training and employment opportunities for economically disadvantaged, unemployed or underemployed persons which will result in an increase in their earned income, and to assure that training and other services lead to maximum employment opportunities and enhance self-sufficiency” (US Code, tit 29, § 801; see, also, § 841).
 
 [4]
 
 Commendably, the county fulfilled the congressional objectives and provided significant job opportunities. The county’s interests, however, have also been served by its participation in the funded program. The county obtained the product of the workers’ labor during their CETA tenure and now has qualified, experienced workers who perform needed county services. Having obtained the benefit of the employees’ CETA experience, the county may not now argue that such experience should be ignored for purposes of the contractual salary provision at issue.
 

 Inasmuch as the Appellate Division determination is stated to be on the law, it is necessary to remit to that court for a review of the facts (CPLE 5613). Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division, Second Department, for further proceedings in accordance with this opinion.
 

 Judges Jones, Wachtler, Fuchsberg and Meyer concur with Chief Judge Cooke; Judges Jasen and Garrielli dissent and vote to affirm for reasons stated in the memorandum at the Appellate Division (77 AD2d 616).
 

 Order reversed, with costs, and case remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein.
 

 [1]
 

 . The Comprehensive Employment Training Act of 1973 is the successor of the Emergency Employment Act of 1971 (formerly codified at US Code, tit 42, § 4871
 
 et seq.)
 
 and was substantially revised in 1978 (Public Law No. 95-524). References are to the present codification.
 

 [2]
 

 . The prime sponsor under the CETA program was a consortium composed of the county, the towns of Hempstead, North Hempstead and Oyster Bay, and the cities of Glen Cove and Long Beach; the county was designated by the consortium to administer the CETA programs in the county.
 

 [3]
 

 . Nor does the Federal scheme necessarily proscribe benefits based on length of service. Subdivision (k) of section 824 provides only that a distinction between public service (CETA) employees and others “may be made * * * for purposes of determining eligibility for participation in retirement systems or plans which provide benefits based on age or service or both.”
 

 [4]
 

 . Former section 801 was substantially similar (see Public Law No. 93-203, § 2). Former section 841 (Public Law No. 93-203, tit II, § 201, as amd by Public Law No. 93-567, tit I, § 106, subd [a]), the congressional statement of purpose for public service employment programs, provided that the purpose of the subchapter was “to provide unemployed and underemployed persons with transitional employment in jobs providing needed public services in areas qualifying for assistance and, wherever feasible, related training and manpower services to enable such persons to move into employment or training not supported under this subchapter.”