Rosenthal v City of New York (2003 NY Slip Op 23887)

Rosenthal v City of New York

2003 NY Slip Op 23887 [2 Misc 3d 451]

November 26, 2003

Supreme Court, New York County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, April 7, 2004

[*1]
Mark Rosenthal, as President of Local 983 of District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO, et al., Petitioners,
v
City of New York et al., Respondents.
Supreme Court, New York County, November 26, 2003

APPEARANCES OF COUNSEL

Kennedy, Schwartz & Cure, P.C., New York City (Stuart Lichten of counsel), for Mark Rosenthal, petitioner. Mary J. O'Connell, New York City, for District Council 37, petitioner. Michael A. Cardozo, Corporation Counsel, New York City (Bruce Rosenbaum of counsel), for respondents.

{**2 Misc 3d at 452} OPINION OF THE COURT

Michael D. Stallman, J. 
In this CPLR article 78 proceeding, union leaders seek declaratory and injunctive relief relating to the Work Experience Program (WEP) in the Parks Department. Petitioners claim that the City violated antidisplacement provisions of the State's Welfare Reform Act of 1997, by using recipients of public assistance assigned to the City's Work Experience Program to do the work of civil service employees.

Background

The City of New York implemented WEP programs mandated by federal and state "welfare reform" legislation in the 1990s that required public assistance recipients to work for their benefits. The federal government adopted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, requiring that those who receive Temporary Assistance to Needy Families (TANF) be engaged in work activities for a minimum average number of hours per week (see 42 USC § 607 [c]). New York State adopted the Welfare Reform Act of 1997, which imposes similar requirements (see Social Services Law §§ 335-b, 336). For those in need of public assistance who are ineligible for TANF, New York State established a program known as Safety Net Assistance (SNA), essentially replacing what was once known as Home Relief (see Social Services Law § 157 et seq.).
To fulfill their work requirements, TANF and SNA recipients participate in activities such as WEP[FN1]

(see Social Services Law § 336). In New York City, the City's Human Resources Administration (HRA) assigns public assistance recipients to work in various mayoral agencies, including the City's Department of Parks and Recreation.
On February 24, 1999, petitioners brought this lawsuit as a plenary action on behalf of their members, Parks Department employees {**2 Misc 3d at 453}in the titles of City Seasonal Aide, Associate Urban Park Ranger, Urban Park Ranger, and Associate Park Service Worker (collectively, Parks Department employees).[FN2]

Petitioners alleged that WEP participants performed the same tasks as Parks Department employees, resulting in, among other things, displacement and job loss for Parks Department employees, in violation of antidisplacement provisions of the Welfare Reform Act of 1997 (see Social Services Law § 336-c [2] [e]).
The Appellate Division, First Department, converted petitioners' claims to a CPLR article 78 proceeding (see Rosenthal v City of New York, 283 AD2d 156, 157 [1st Dept 2001]). The Appellate Division held: "The claims emanate not from a categorization of the assignments of WEP participants, but rather from the claimed displacement of union employees. Whether each adverse employment determination affecting a Parks Department employee violated Social Services Law § 336-c (2) (e) can be determined by examining each individual case" (id. at 159). On remand, respondents now contend that petitioners cannot make out a claim under the Appellate Division's decision in Rosenthal.

Scope of Proceeding

In a CPLR article 78 proceeding, judicial review of the acts of an administrative agency is limited to questions expressly identified by statute (Matter of Featherstone v Franco, 95 NY2d 550, 554 [2000]). Insofar as applicable here, judicial review is limited to the question "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (CPLR 7803 [3]). Here, as the Appellate Division noted, petitioners "are seeking review of the assignments of WEP participants at the Parks Department, alleging that they perform parks maintenance related tasks in violation of the 'non-displacement' statute [Social Services Law § 336-c (2) (e)]" (Rosenthal, 283 AD2d at 158).
Thus, to the extent that petitioners are seeking review of a policy of respondents (see Rosenthal mem at 15; Roberts's reply mem at 10), such a claim was removed from this lawsuit when the {**2 Misc 3d at 454}Appellate Division, First Department, converted the two companion plenary actions into article 78 proceedings and held that petitioners' claims "can be determined by examining each individual case." (Rosenthal, supra, 283 AD2d at 159.)
The relevant provisions of Social Services Law § 336-c provide that a recipient of public assistance may be assigned to WEP only if
"such assignment would not result in (i) the displacement of any currently employed worker or loss of position (including partial displacement such as reduction in the hours of non-overtime work, wages or employment benefits) or result in the impairment of existing contracts for services or collective bargaining agreements; (ii) the employment or assignment of a participant or the filling of a position when . . . the employer has terminated the employment of any regular employee or otherwise reduced its workforce with the effect of filling the vacancy so created with a participant assigned pursuant to this section; . . . (iv) the performance, by such participant, of a substantial portion of the work ordinarily and actually performed by regular employees; or (v) the loss of a bargaining unit position as a result of work experience participants performing, in part or in whole, the work normally performed by the employee in such position" (Social Services Law § 336-c [2] [e]).

I

Alleged Displacement of Parks Department Employees (Social Services Law § 336-c [2] [e] [i])

Petitioners allege that WEP participants assigned to the Parks Department perform the same work as Parks Department employees, based on the similarity of their job descriptions, and statements and testimony from Parks Department supervisors[FN3]

(see Roberts's exhibits R-W; Rosenthal affidavit ¶ 6; Nelson affidavit ¶¶ 3-5). From 1993 to 2001, the number of Parks Department employees allegedly decreased as the number of WEP participants increased (see Rosenthal mem at 8-9, Rosenthal's exhibit I; see also Roberts's exhibit AA). Petitioners indicate that {**2 Misc 3d at 455}cleanliness ratings for the Parks Department have increased since WEP participants were assigned there (Roberts's exhibits F-I), and that the Parks Department considers that WEP participants perform vital, essential work (Roberts's exhibits Q, CC). Therefore, petitioners conclude that WEP participants are displacing Parks Department employees.[FN4]

The record does show that the tasks performed by WEP participants at the Parks Department were similar to the work performed by Parks Department employees in the titles of City Seasonal Aide and Associate Park Worker. Parks Department supervisors testified that they supervised, assigned, and observed WEP participants raking leaves, stabbing paper with a litter pick, cleaning bathrooms, painting benches and walls, setting up special events, erecting temporary fencing, loading and unloading barricades, placing ice barrels into the lake, mowing lawns, edging, spreading wood chips, raking out ruts in the lawn, and removing graffiti, leaves, and snow, etc. (see Roberts's exhibits R-W; Rosenthal affidavit ¶ 6; Nelson affidavit ¶¶ 3-5). Liam Kavanaugh, who is currently the Deputy Commissioner of Operations for the Parks Department, testified at his deposition that WEP participants were assigned primarily to clean parks and playgrounds, using rakes, shovels, brooms, stabbers, and occasionally weed whackers (Roberts's exhibit M at 43 [Kavanaugh deposition]). These tasks do correspond to examples of typical tasks for an Associate Park Service Worker and City Seasonal Aide (see Roberts's exhibits A, B).
To be clear, petitioners do not contend that WEP participants perform the same functions as Urban Park Rangers and Associate Urban Park Rangers. Though WEP participants may patrol park areas, provide additional security at special events, and answer questions from the public (see Puelo affidavit ¶¶ 3-4; Oro affidavit ¶¶ 4-6), WEP participants do not issue summons for violations of park rules, insure compliance with health and sanitary codes, and are not preparing in-class presentations dealing with botany, zoology, and environmental education, to name a few differences (see Roberts's exhibits C, D).
However, petitioners' argument begs the question. That WEP participants may have performed similar, if not identical, work to that of Parks Department employees does not constitute a violation of the statute (cf. Ballentine v Sugarman, 74 Misc 2d 267, {**2 Misc 3d at 456}270 [Sup Ct, NY County], affd sub nom. Gotbaum v Lindsay, 43 AD2d 815 [1st Dept 1973]).[FN5]

WEP is intended to provide persons on public assistance with career training and job experience when they might otherwise have had difficulty finding employment or training (Epstein affidavit ¶ 4). That purpose would be defeated if WEP participants performed tasks that do not parallel real world jobs.
Petitioners do not establish the correlation they allege between the number of Parks Department employees and the number of WEP participants. Irrespective of what the overall correlation might have been during 1993-2001, that correlation does not appear during the four months preceding the filing of this petition, which is the statute of limitations period. (CPLR 217.) As the Chief Fiscal Officer of the Parks Department points out, there was no increase in staffing levels of Parks Department employees between October 1998 and March 2001, notwithstanding a concomitant, significant reduction in the number of WEP participants (see Stark supp affidavit ¶ 19). Moreover, petitioners' own data shows that, during 1998-1999, the number of full-time equivalent WEP participants decreased by 800, but the total number of Parks Department employees increased only by four (Rosenthal mem at 3-4, figure 1). From 1999 to 2000, the total number of union employees continued to decrease notwithstanding the fact that the number of WEP participants decreased as well (see ibid.).
Petitioners argue that the 1993-2001 data are relevant "background evidence." The court need not here determine how far back petitioners go in order to establish a discernible trend. The Appellate Division held in Rosenthal that petitioners have the burden of proving that the quantity and quality of WEP participation displaced specific civil servants on a case-by-case basis.
The Appellate Division clearly stated: "Whether each adverse employment determination affecting a Parks Department employee violated Social Services Law § 336-c (2) (e) can be determined by examining each individual case" (Rosenthal, 283 AD2d {**2 Misc 3d at 457}at 159; accord Wallace v County of Nassau, 302 AD2d 517, 518 [2d Dept 2003] ["the individual circumstances of each allegedly affected CSEA employee would need to be explored to determine whether there has been a violation"]).
The First Department's emphasis on an individualized inquiry in Rosenthal constrains this court to conclude that petitioners must specify the Parks Department employees who were allegedly displaced, and the dates of their displacement (for statute of limitations purposes), in order to state a cause of action under Social Services Law § 336-c (2) (e) (i). Petitioners have not done so. Although petitioners dispute whether Rosenthal requires such particularity (Rosenthal mem at 14; Rosenthal reply mem at 8-9; Roberts's reply mem at 20-21), such basic information is necessary in order to review claims of displacement on a case-by-case basis.
Although the record does contain scattered accounts of alleged displacement, these accounts are not sufficiently specific to allow review of the individual circumstances of each incident.
Given the Appellate Division's emphasis on an individualized inquiry, a violation of the statute cannot be based solely upon statistical overviews of a correlation between the number of Parks Department employees and the number of WEP participants. Neither do studies of the generalized effect of WEP on the City's labor market prove that individual Parks employees were "displaced" within the meaning of the statute. Statistical evidence may indeed show patterns and trends over time. However, the data offered by petitioners does not necessarily support petitioners' position.
If petitioners were not also required to show the circumstances of any individual case, then respondents would effectively be prohibited from assigning any WEP participant to the Parks Department, or indeed to any City agency. To adopt petitioners' reasoning would mean that no WEP assignment could be made, because of the alleged statistical likelihood of displacement of regular employees, even though the provisions of the Social Services Law permit recipients of public assistance to be assigned to WEP. Such a result contradicts the clear legislative intent of the statute and settled rules of statutory construction (see McKinney's Cons Laws of NY, Book 1, Statutes § 145).
Respondents convincingly show that, were the City prevented from placing WEP participants with any City agency, the City could not meet mandatory participation rates under state and federal law, resulting in a loss of funding and other financial penalties {**2 Misc 3d at 458}(respondents' mem at 37-46). Although petitioners contend that the City may meet its participation rates through a variety of placements other than WEP assignments, petitioners equivocate about how the City can achieve this. On the one hand, petitioners argue that the Parks Opportunity Program (POP) is one way that respondents can comply with statutory mandates without displacing Parks Department employees (Roberts's reply mem at 11; Rosenthal reply mem at 4-5). On the other hand, petitioners originally argued that POP was further evidence of how WEP participants displaced regular employees (Roberts's mem at 25-27).[FN6]

Petitioners also submit no proof that the City would be able to meet its participation rates if the City could not make any WEP assignments to any City agencies.
Rosenthal proposes that the City use WEP in agencies when the regular workforce remains steady or increases (Rosenthal reply mem at 6). However, petitioners' alleged negative correlation fatally undermines even this proposal. Petitioners are basically arguing that, when WEP participants are assigned to the Parks Department, regular employees will lose their jobs. To admit that the City can assign WEP participants to the Parks Department and increase the regular workforce at the same time is to admit that WEP participants are not the cause of the displacement. Furthermore, this proposal inherently pits those who have jobs against those who do notthat people on public assistance should receive no job experience or training when the City's economy is bad.
The fact that WEP participants have contributed to the cleanliness of the park system hardly amounts to an admission that WEP participants are replacing Parks Department employees. Petitioners do not allege that there is insufficient work to go around. Parks Department employees and WEP participants assigned to the Parks Department all contribute to the public good. One cannot assume automatically that, were WEP participants not assigned, that more Parks employees would be hired or that existing employees would do the work done by WEP participants. Conclusively, it does not automatically follow that the assignment of WEP work actually caused the displacement of specific Parks employees.
Therefore, this court finds that petitioners fail to state and show a violation of Social Services Law § 336-c (2) (e) (i).{**2 Misc 3d at 459}

II

Termination of a Parks Department employee or reduction of the Parks Department workforce with the effect of filling a vacancy so created with a WEP participant (Social Services Law § 336-c [2] [e] [ii])

Here, petitioners focus on the part of clause (ii) that prohibits WEP assignments that would result in termination of a Parks Department employee, or reduction of the Parks Department workforce with the effect of filling a vacancy so created with a WEP participant. Rosenthal argues that the fact that the number of WEP participants assigned to the Parks Department increased, when the Parks Department allegedly reduced its workforce, constitutes a violation of clause (ii) (Rosenthal mem at 12). Rosenthal believes that, had WEP participants not been available to maintain the parks, the Parks Department would not have reduced the budget for regular employees (Rosenthal affidavit ¶ 9).
Both Roberts and Rosenthal contend that respondents violated this clause when the Parks Department did not hire new employees to replace those who had resigned or left the Parks Department (see id. at 14; see also Rosenthal affidavit ¶ 7; Roberts's mem at 30). Roberts cites an academic scholar's working paper on workfare, wherein the author states,
"And in fact, other statements by city officials document that workfare placements are taking up the slack for reductions in force. William Diamond, Commissioner of the Department of General Services[,] told the New York Times, 'They're saving this agency' (Martin 1995) . . . Tupper W. Thomas, administrator of Brooklyn's Prospect Park (where the staff has been cut in half), made a similar statement: 'This program has saved our lives' (Martin 1995)" (Roberts's exhibit BB).
Contrary to petitioners' contention, clause (ii) does not apply to a decrease in the number of Parks Department employees due to their attrition or retirement. The statutory meaning of a reduction in workforce must be construed with the words associated in connection with those terms (see McKinney's Cons Laws of NY, Book 1, Statutes § 239 [the principle of noscitur a sociis]). Here, the provision states, "when . . . the employer has terminated the employment of any regular employee or otherwise reduced its workforce." (Social Services Law § 336-c [2] [e] [ii].) Thus, a reduction in workforce must refer to an action by an agency {**2 Misc 3d at 460}to reduce its workforce, such as through a termination, and not to the action by an employee to leave or retire from the Parks Department.[FN7]

The academic scholar's working paper is hearsay, largely unverifiable and conjectural. Specific quotations, such as those from a 1995 newspaper article, are not material to events covered by the limitations period. Finally, petitioners fail to provide sufficient information to identify those Parks Department employees who were allegedly terminated, as required under Rosenthal's case-by-case examination.

III

A WEP participant's performance of a substantial portion of the work ordinarily and actually performed by Parks Department employees (Social Services Law § 336-c [2] [e] [iv])

Here, petitioners argue that respondents violated Social Services Law § 336-c (2) (e) (iv), because the Parks Department allegedly relied on WEP participants to fulfill its operational objectives (Roberts's mem at 25). Next, petitioners also rely on the same arguments advanced earlier: the job description of WEP participants is virtually identical to that of Parks Department employees, and Parks Department supervisors allegedly assigned and observed the WEP participants performing such tasks (see Roberts's exhibits R-U).
Petitioners have failed to state and demonstrate a violation of clause (iv). Contrary to petitioners' interpretation of this clause, the unambiguous language of this provision does not prohibit the use of WEP participants to fulfill an agency's operational objectives.
The Appellate Division held that violations of the statute require an individualized inquiry. Because the statutory provision here speaks in terms of a particular WEP participant, petitioners should therefore have named particular WEP participants whose assignments violated this clause. Without their names, respondents would be unable to refute petitioners' allegations that these particular WEP participants did not perform a substantial portion of the work ordinarily and actually performed by Parks Department employees.{**2 Misc 3d at 461}
Although petitioners maintain that it would be practically impossible to name particular WEP participants, the Appellate Division rejected this argument as irrelevant. "It is irrelevant that it would be difficult, or even impossible, to pinpoint the specific job positions of WEP workers assigned to the Parks Department" (Rosenthal, 283 AD2d at 167). Indeed, as petitioners claim that WEP participants are working alongside Parks Department employees, it hardly seems impossible for the Parks Department employees to ask the WEP participants for their names.
In any event, what is lacking in petitioners' case is proof that the work of the WEP participants was ordinarily and actually performed by Parks Department employees, and that the level of the work of the WEP participants constituted a substantial portion of the work of Parks Department employees. 

IV

Loss of a bargaining unit position (Social Services Law § 336-c [2] [e] [v])

Roberts argues that the Parks Department's reliance upon WEP shows that it assigned WEP participants to perform the work normally performed by regular Parks Department employees, thereby resulting in the loss of bargaining unit positions (Roberts's mem at 30). Rosenthal argues that the alleged displacement of Parks Department employees also constitutes the loss of bargaining unit positions (Rosenthal mem at 12).
Petitioners' arguments fail because, as discussed above, petitioners have neither stated nor proven displacement of Parks Department employees. Petitioners failed to allege a loss of bargaining unit positions with a basic level of detail required under Rosenthal for a case-by-case analysis. Neither Rosenthal nor Roberts alleges that any bargaining unit positions were lost in the four months preceding the filing of this lawsuit.
A violation of clause (i) does not automatically constitute a violation of clause (v). The former looks at the effect of the assignment upon the Parks Department employee; the latter entails an examination of the tasks of WEP participants. Hypothetically, if WEP assignments to the Parks Department result in the reduction of the nonovertime hours of a Parks Department employee, but, if the assignments do not result in termination of that employee, this would constitute a violation of clause (i), but not clause (v). While it is possible that one set of facts could give rise to a violation of both clauses, petitioners did {**2 Misc 3d at 462}not allege with sufficient specificity to demonstrate a violation of either clause.
The alleged loss of bargaining unit positions does not, by itself, constitute a violation of clause (v). Petitioners must also show that the loss of a particular bargaining unit position was the result of a particular assignment of WEP participants who performed, in whole or in part, the work normally performed by a specific Parks Department employee in such a position. Petitioners have not done so.

Conclusion

Petitioners have failed to state and prove that respondents violated Social Services Law § 336-c (2) (e).[FN8]

Accordingly, it is adjudged that the petition is denied and the proceeding is dismissed.

Footnotes

Footnote 1: A recipient may be assigned to participate in WEP if "the project to which the participant is assigned serves a useful public purpose in fields such as health, social services, environmental protection, education, urban and rural development and redevelopment, welfare, recreation, operation of public facilities, public safety, and child day care" (Social Services Law § 336-c [2] [d]).

Footnote 2: Petitioner Roberts and other union leaders brought a separate action, also before this court, on behalf of union members in the titles of City Park Worker and Park Service Worker (see Roberts et al. v City of New York et al., Index No. 102129/1999). An equivalent summary judgment motion therein is decided simultaneously.

Footnote 3: "Parks Department supervisor" refers to those individuals who held the titles of Park Supervisor and Principal Park Supervisor until the titles were consolidated into the title of Supervisor of Parks Maintenance and Operation (Roberts's mem at 14).

Footnote 4: Petitioners submit the working paper of an academic scholar, who reaches a similar conclusion about workfare's impact on the City's labor market (Roberts's exhibit BB).

Footnote 5: In Ballentine, the court was interpreting Social Services Law § 164, a statute that has since been repealed, but which contained anti-displacement provisions somewhat similar to Social Services Law § 336-c (2) (e). The court opined (at 270): "I do not think the statute means that relief recipients cannot be used to do the same kind of work as regular employees are doing, to supplement that work and to supplement manpower shortages due among other things to budgetary restrictions."

Footnote 6: It is undisputed that POP was created in 2001, long after the applicable limitations period in this action (see Weber affidavit ¶ 3).

Footnote 7: The court does not determine whether an early retirement incentive program would constitute a reduction in workforce for the purposes of this statute, because petitioners have not alleged any employees who chose such an option within the limitations period. However, the statute does not appear to have been directed against retirement programs in general, or specific incentives of general application.

Footnote 8: In light of the court's decision on the merits, the court does not address any statute of limitations arguments. However, this court notes that the Appellate Division left open the question of when petitioners' claims actually accrued, and whether the same accrual date would be appropriate for all provisions of Social Services Law § 336-c (2) (e).