776

In the Matter of the Application of FRANK GROSSO and Others, Petitioners, for a Mandamus Order against ROBERT MOSES, as Commissioner of Parks of the City of New York, and Others, Respondents.*

Supreme Court, New York County, June 21, 1934.

*Aff'd., 243 App, Div. 765; motion for leave to appeal to Court of Appeals denied, 244 App. Div. 717; motion for leave to appeal denied by Court of Appeals May 28, 1935.

*Birnbaum & Kaplan* [*H. Eliot Kaplan* and *Sol Charles Levine* of counsel], for the petitioners.

*Paul Windels, Corporation Counsel* [*Julius Isaacs* of counsel], for the respondents.

DORE, J. This proceeding was commenced on or about August 7, 1933, by the six petitioners for a peremptory mandamus order directing the commissioner of parks of the borough of Queens and the members of the municipal civil service commission of the city of New York (respondents) to reinstate the petitioners to their respective positions of engineering assistant, topographical draftsmen and architectural draftsmen in the department of parks, borough of Queens, and to pay, certify and direct the proper disbursing officers of the city of New York to pay their salaries from October 1, 1932, to the date of their respective reinstatements.

At Special Term, on September 21, 1933, an alternative mandamus order was granted and thereafter affirmed by the Appellate Division, First Department, requiring trial of the issues which were had before the court. On the trial the facts were established as uncontradicted and undisputed. Prior to September 30, 1932, petitioners, after competitive civil service examination, had been employed as engineering assistants, topographical draftsmen and architectural draftsmen in the park department, Queens borough. On September 30, 1932, petitioners were suspended in inverse order of their original appointment; their names were transmitted to the municipal civil service commission and placed upon the preferred eligible list and have ever since appeared on said eligible list. Since their suspension, no other names have been certified by the municipal civil service commission to the department of parks, Queens borough, and no appointments have been made from any civil service list to the positions occupied or to perform the work of petitioners. In the notice of suspension sent by the commissioner of parks, Queens borough, to each of the several petitioners on or about September 8, 1932, the park commissioner stated: " I regret to inform you that your services as [stating position] will cease at the close of business

September 30, 1932. This action becomes necessary due to lack of funds. Your name will be returned to the Municipal Civil Service Commission with the request that it be placed on the preferred list." After September 30, 1932, there were no regular appropriations or moneys out of corporate stock available for the payment of the salaries of these petitioners, who were corporate stock employees, that is to say, their compensation or salary was paid from proceeds of corporate stock.

Under the above uncontradicted facts, there being no appropriation of available funds to pay the compensation or salaries of these petitioners from and after September 30, 1932, the commissioner of parks, Queens borough, was required by the provisions of section 1543 of the charter of the city of New York to suspend these petitioners and return their names to the municipal civil service commission for placement upon the preferred list. Petitioners, nevertheless, contend that their rights and status as competitive civil service employees have been improperly and illegally violated, claiming that since October 1, 1932, " emergency relief workers " have been performing duties similar to those of petitioners in the department of parks, borough of Queens, and that such emergency workers were appointed in violation of section 31 of the Civil Service Law, as amended by chapter 512 of the Laws of 1929, and are being paid by funds and moneys of the city of New York.

The emergency relief laws (Laws of 1931, chap. 798, Ex. Sess., as amd. by Laws of 1932, chap. 567, and by Laws of 1933, chap. 9, and Laws of 1933, chap. 2) created a temporary State agency known as the Emergency Work and Relief Administration, and contained the following provisions, among others: In section 1 thereof: " This act, therefore, is declared to be a measure for the public health and safety and occasioned by an existing emergency. The provisions of any general, special or local law which are inconsistent with the provisions of this act   *   *   *   shall not apply to the relief authorized by this act." (Laws of 1931, chap. 798, Ex. Sess.) In section 19 of said act it is provided: " The administration may authorize city and county commissioners to employ such additional clerical and other assistants or volunteers, with qualifications satisfactory to the administration, who shall not be subject to the provisions of the civil service law." (Laws of 1931, chap. 798, Ex. Sess.) The act provides in section 31: " If a statute, general or special, or any local law or ordinance confers a power, prescribes a duty, or imposes a restriction inconsistent with this act,   *   *   *   such power shall not be exercised, or such duty or restriction enforced during the emergency period." (Laws of 1931, chap. 798, Ex. Sess.) The Emergency Relief Law was amended by chapter 567 of the Laws

of 1932 (§ 1). In section 19 thereof it is provided that "No person employed pursuant to this act, during the emergency period, shall be subject to the provisions of the civil service law." In accordance with the provisions of the Emergency Relief Law, both before and after the suspension of these petitioners, namely, on September 30, 1932, the board of estimate and apportionment has authorized the performance of public work other than by contract under the supervision and control of the emergency work and relief administration, in accordance with projects approved by the said emergency work and relief administration, including work in the department of parks, borough of Queens. None of the "emergency relief workers" so employed in and about the parks in the borough of Queens were engaged or discharged by the department of parks, borough of Queens, through its various officers and staff, but they were selected and engaged by the emergency work and relief commission, which determined the salaries, the time of employment, selected the employees, and sent them to the park department for assignment to work. The department of parks, through its staff, merely directed, supervised and inspected the work of such "emergency relief workers." These "emergency relief workers" so employed and assigned for relief work in and about the parks of Queens borough did work, such as drafting, plotting, tracing from blueprints, checking specifications, field work, driving stakes, chaining, taking measurements of and computing truckloads carrying city material, running a rod, plane table work, drawing maps, tracings, plotting field notes of preliminary surveys, etc.

At various times since October 1, 1932, there have been upwards of ten persons assigned by the emergency work and relief administration for work in the Queens borough park department at the above-mentioned work, and this number, after March 1; 1933, was increased from time to time so that at the time of trial there were approximately sixty persons doing such work in said department as relief workers, some of them since April, 1933, acting in a supervisory capacity over 6,000 emergency relief workers, under the direction of the regular civil service engineer in charge, assistant engineer and landscape architect. These relief workers were paid as follows: (1) From September 1, 1932, to November 20, 1933, the pay was in the form of a check or order made by the city of New York which was earmarked for relief purposes, and these advances were paid in accordance with chapter 798 of the Laws of 1931 (Ex. Sess.) and amendments thereto, upon the condition that forty per cent of said advances would be refunded to the city by the State of New York, sixty per cent thereof being paid from city relief funds; (2) from November 20, 1933, to April 1, 1934, the payments were

entirely made in the form of check or draft of the United States government; (3) after April 1, 1934, the funds were seventy-five per cent Federal and State funds and twenty-five per cent city funds.

In that state of fact the real issues presented on the trial were: Whether the petitioners were in truth suspended, as alleged, for lack of funds, and whether the city thereafter appropriated funds in the guise of relief, but actually for the purpose of filling the positions of the suspended civil service employees in contravention of the Civil Service Law. The record shows as an indisputable fact that the plaintiffs were suspended, in truth, for lack of funds. This is not a case in which the petitioners were ousted in order to give their places to others and in which the suspension and dropping from the payroll of the petitioners and the subsequent addition of others in their places were all parts of one transaction. The good faith of the respondents is material and cannot on this record be questioned. The relief workers were not employed in the guise of relief, but in good faith as a part of the emergency relief program, made necessary by the widespread and prolonged depression, and they were not employed by the commissioner of parks, but by the Emergency Work and Relief Commission. If the suspension of these civil service employees and the later employment of relief workers by the Emergency Relief Commission and assignment to work by the park department were found to be part of a plan to oust civil service employees and place in their positions others merely in the guise of relief workers, but actually to supplant the civil service workers who had been suspended, a different case would be presented. The emergency relief laws never contemplated the creation of " made work " by the deliberate displacement of persons in positions on the competitive civil service list for the purpose of supplanting them with relief workers, and such is not this case. The mere fact that the city and State have appropriated funds for emergency relief gives no legal right to these petitioners to be continued in their respective positions in the absence of funds appropriated to pay their compensation as civil service employees. That some of the emergency relief is performed in and about the city parks does not alter the situation. The Legislature by the emergency relief laws has exempted persons employed under such law from all the provisions of the Civil Service Law.

The extraordinary remedy of an order of mandamus rests in the discretion of the court and is not afforded except upon the establishment of a clear legal right. On this record I am constrained to hold that the petitioners have not established a clear legal right to peremptory mandamus. On the undisputed facts and the controlling rules of law, I am of the opinion that these petitioners are not

entitled to a peremptory mandamus order for the relief prayed for in the petition, and that this application must be dismissed upon the merits. Since under the provisions of sections 1317 and 1334 of the Civil Practice Act, the court at Trial Term is without power to grant a final mandamus order, and after trial of the issues must make a decision to be returned to Special Term, where the final order must be made, I direct that findings of fact and conclusions be presented upon two days' notice on or before June 27, 1934, and upon the signing of the same either party may move at Special Term upon such findings of fact and conclusions for a final order dismissing this proceeding. Proceed accordingly.