Edward J. Greenfield, J.
This is a CPLR article 78 proceeding to enjoin respondents from re-employing 150 previously laid-off New York City firemen pursuant to the United States Comprehensive Employment and Training Act of 1973 (CETA) (US Code, tit 29, § 801 et seq.). Petitioners are five firemen who were not reinstated because they did not reside within the City of New York. Respondents include the Mayor, the Civil Service Commission, and the Fire Commissioner. Additionally, the United States Department of Labor has been granted leave to intervene in the proceeding as an intervenorrespondent.
Subchapter VI of CETA furnishes Federal funding for "transitional employment” of unemployed and underemployed persons in jobs providing needed public services in areas of substantial unemployment (US Code, tit 29, § 962). The act is implemented by agreements between the Secretary of Labor and "eligible applicants” (political subdivisions such as New York City). The Federal moneys are allotted among the various eligible applicants in proportion to the relative number of *505 unemployed persons residing in each applicant’s area (US Code, tit 29, § 963). Accordingly, when localities apply for assistance, they must give "assurances that only persons residing within the area of substantial unemployment * * * will be hired to fill jobs created under this subchapter” (US Code, tit 29, § 845, subd [c], par [3]).
As a consequence of the fiscal crisis confronting the city, approximately 1,680 uniformed firemen, including the petitioners, were suspended from the Fire Department on June 30, 1975 pursuant to section 80 of the Civil Service Law. Subsequently, the city entered into negotiations with the Department of Labor and received authorization to rehire, with CETA funds, a number of permanent employees who had been laid off from various critical municipal agencies, including 150 firemen. As mandated by the act, the city gave assurances in its application for funding that it would comply with the CETA residency requirements. Reappointments to the Fire Department (in Dec., 1975) were made under the title "Fireman (CETA)” in the order of seniority. However, petitioners, whose seniority concededly placed them within the group of 150 scheduled to be retired, were declared ineligible under the CETA program because they did not reside within the city. Petitioners allege that their rejection for re-employment was arbitrary and unreasonable and in violation of section 81 of the Civil Service Law as well as State law prohibiting residency requirements as a condition of employment within the Fire Department. (During the pendency of this proceeding, all five petitioners were provisionally retired with funding granted to the city under another Federal program, which does not require residence within the city. In view of the temporary nature of their reappointments, and the importance of the issue to others besides the petitioners, the court will not deem the issue to be moot.)
Section 81 of the Civil Service Law requires that when positions are abolished in the civil service by reason of economic conditions (see § 80), a preferred eligible list be promulgated, in the order of seniority, to fill vacancies occurring in those positions. Petitioners contend that the city violated the statute by passing them over for CETA positions. (In fact, it appears that the city in making appointments to the CETA program utilized the seniority list established under section 81 to the extent that the firemen thereon were able to comply with CETA requirements.) However, the laid-off firemen in *506 question were not reinstated to their former positions as permanent civil service employees. They were appointed to newly created CETA titles, which do not confer civil service status. The CETA program contemplates a temporary period of "transitional employment” until the job holder can move into regular unsubsidized employment (US Code, tit 29, § 962). The fact that a "Fireman (CETA)” performs substantially similar functions as he had performed in his capacity as a regular city fireman does not alter his legal status (see Matter of Ballentine v Sugarman, 74 Misc 2d 267, 270, affd sub nom Gotbaum v Lindsay, 43 AD2d 815). Petitioners have no legal right to be continued in their positions in the absence of funds appropriated to pay their compensation as civil service employees (Matter of Grosso v Moses, 157 Misc 776, affd 243 App Div 765, mot for lv to app den 268 NY 725).
CETA employees have no tenure and may be terminated at any time if the funding provided by the Federal Government is cut off. They do not receive seniority benefits as a result of their participation, nor are they permitted to use "CETA time” as a basis for promotion (though they may receive certain salary increments). They remain in the same position on the eligible list for permanent reappointment in relation to their brother firemen who were not eligible for the CETA program but who continue to accrue "continuous service” credit (Civil Service Law, § 80, subd 2). The court is informed that the funding for the CETA program, insofar as it relates to firemen, expired June 30, 1976, approximately six months after it commenced. Consistent with the goals of CETA, the current CETA firemen are scheduled to be transferred to new tax levy lines (subject to Civil Service Law, § 81).
The court finds that the city’s application for the short-term relief afforded under CETA to assist in meeting an emergency situation does not pose the grave threat to the civil service merit system which petitioners predict. (Matter of Social Investigator Eligibles Assn. v Taylor, 268 NY 233.) On the contrary, close scrutiny of the act reveals that it has been "carefully drawn so as not to interfere either with the job opportunities of those awaiting regular municipal employment or with the job security and promotions of those already employed” (White v City of Paterson, 137 NJ Super 220). For example, the jobs funded under CETA must be in addition to those that the locality could fund on its own (US Code, tit 29, § 845, subd [c], par [25]). Nor can a locality lay off permanent *507 employees in anticipation of filling the vacancies so created with employees supported by CETA (US Code, tit 29, § 845, subd [c], par [8]; § 848, subd [a], par [1], cl [B]). And persons may not fill CETA titles when others are already in lay-off from the same or similar jobs (US Code, tit 29, § 845, subd [c], par [7]). In the instant case, no claim is made that the city acted in bad faith in implementing its CETA program. The firemen appointed to CETA titles are all former New York City permanent employees who passed a competitive examination. While the city must pay a proportionate share of each CETA fireman’s salary and pension contribution (CETA limits Federal funds provided to each employee to $10,000) the city must pay any excess amount necessary to bring the employee’s salary up to the prevailing rate paid by the city to similar employees (US Code, tit 29, § 848, subd [a], pars [2], [3], [4]), the city estimates that over a six-month period it saves approximately $7,000-8,000 per CETA fireman employed, money which would otherwise be paid as overtime to regular city firemen. Accordingly, it is apparent that the city’s contribution is not a substitute for funds which would have been expended to rehire additional permanent employees.
Temporary programs which do not manifestly offend civil service provisions must be viewed sensibly against the needs and requirements of emergency or special situations (Council of Supervisory Assns. of Public Schools of N.Y. City v Board of Educ. of City of N. Y., 23 NY2d 458, 469; see, also, Council of Supervisory Assns. of Public Schools of N. Y. City v Board of Educ. of City of N.Y., 67 Misc 2d 548, 550, 551). Under all the circumstances, the hiring of employees under the CETA program, as implemented herein, is not incompatible with the civil service system and will not result in "an extra-legal and cognate system of government employment * * * set up to evade the principle of merit and to create a new spoils system.” (Gotbaum v Sugarman, 78 Misc 2d 827, 831; see, also, White v City of Paterson, supra.)
Petitioners also contend that the city’s entry into the CETA program violated section 99-h of the General Municipal Law, which permits municipalities to participate in Federal Government programs “relating to the general welfare” to the extent that the Federal laws establishing such programs are "not inconsistent with the statutes or constitution of this state”. Petitioners allege that the city’s "adoption” of CETA’s residence requirement is in conflict with subdivision 9 of section 3 *508 of the Public Officers Law, allowing a "paid member of the uniformed force of a paid fire department” to reside in specified areas outside the political subdivision in which he performs his functions. In this connection, petitioners principally rely upon Matter of Maye v Lindsay (69 Misc 2d 276, revd 41 AD2d 127, revd on opn at Spec Term 33 NY2d 552). In the Maye case, Federal funds were made available to New York City under a model cities grant to create new civil service titles in the uniformed services. The City Civil Service Commission restricted examinations for the new positions to residents of selected model cities areas in the city. The program was declared invalid on the ground that restriction of employment only to those who lived in certain parts of the city, under the circumstances of that particular case, with appointment leading to permanent civil service status, would have violated constitutional and statutory civil service requirements for appointments based upon merit and fitness as determined by competitive examination.
This court is not persuaded that the CETA appointments herein, as compared to the permanent appointments involved in Maye, contravene civil service considerations. The city was bound to comply with the residence requirements of the Federal statute as a precondition for eligibility for funding (US Code, tit 29, § 845, subd [c], par [9]). The objective of the model cities program, on the other hand, was to deal on a permanent basis with localized employment within parts of New York City through guidelines structured by the City Civil Service Commission. The grants here involved were made on a temporary basis to provide "transitional employment” in areas of substantial unemployment within entire political subdivisions such as New York City. They were not intended to deal with the problems in less affected suburban communities. The subject section of the Public Officers Law was undoubtedly enacted for the benefit of municipalities so they would not encounter difficulties in recruiting firemen. That law has no relevancy to the present CETA program. In fact, it would serve to frustrate the legislative intent if the statute was now used to thwart a municipality’s temporary rehiring of former employees during a period of severe financial stress. To sustain petitioners’ position would deprive 150 firemen of their jobs (however shortlived) and deprive the city of the critical public services they provide; nor would any perceptible positive benefit accrue to the petitioners. No reason is seen, in law or equity, to dictate such a result.
*509 The petition is dismissed on the merits.