UNIFORMED FIREFIGHTERS ASSOCIATION, LOCAL 94, IAFF, AFL–CIO; Nicholas Mancuso, as President of the Uniformed Firefighters Association, Local 94, IAFF, AFL–CIO; Stephen Rosendale; Brian Hughes; Nicholas Portaro; Richard Comiskey; Francis McCaffery; Robert Higdon; Thomas Sirigano; Thomas Thompson; Edward Wazeter and Robert Alt, Plaintiffs,

v.

The CITY OF NEW YORK, a municipal corporation; Edward Koch, as Mayor of the City of New York; The Civil Service Commission of the City of New York; Juan Ortiz, as Chairman of the Civil Service Commission of the City of New York; Harry Amer, Anne Buehler, Natalie Katz and Mark Lebow, as Commissioners of the Civil Service Commission of the City of New York; The Department of Personnel of the City of New York; Michael Nadel, as Director of the Department of Personnel of the City of New York; The Fire Department of the City of New York and Augustus Beekman, as Fire Commissioner of the City of New York, Defendants.

No. 80 Civ. 2036(MP).

United States District Court, S. D. New York.

April 17, 1981.

Cohen, Weiss & Simon, by James V. Morgan, New York City, for plaintiffs.

Allen G. Schwartz, Corp. Counsel of the City of New York, by Stephen P. Kramer and Maralyn Fairberg, Asst. Corp. Counsels, New York City, for defendants.

## OPINION

MILTON POLLACK, District Judge.

Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the complaint for failure to state a claim on which relief may be granted. The suit is by the Uniformed Firefighters Association ("UFA") on its own behalf and for and in the interests of all firemen employed by the City of New York by the President of UFA in behalf of the association and of the firemen employed by the City who are members of the UFA.

The complaint asserts that on or about June 30, 1975 approximately 1,650 uniformed firemen employed by the City, including the 10 individual plaintiffs herein were suspended for economic reasons by the City from their positions with the Fire Department. As a result of a severe budgetary crisis the City was compelled to order widespread layoffs of thousands of permanent civil service employees.

In November 1975, the City applied for and was granted federal funds pursuant to the Comprehensive Employment and Training Act of 1973, as amended, 29 U.S.C. § 801 *et seq.* ("CETA") in order to rehire city employees, including firefighters, laid off during the fiscal crisis. Subsequently, additional funds were also obtained from the job opportunity programs of the United States Department of Housing and Urban Development ("HUD") to re-employ city employees.

In order to be re-employed under the federal programs an applicant had to meet stringent eligibility requirements including residence within the City of New York and a specified period of unemployment. *See e. g.,* 29 C.F.R. 99.36; 99.53 (1975). Section 81 of the New York Civil Service Law requires that whenever positions in the civil service are abolished by reason of economic conditions, a preferred eligible list must be promulgated and this list must be used in rank order to fill any vacancies that arise. Viewing the federal and state statutes together, the City in making appointments to federally-funded positions, could not use the eligible list promulgated under sections 81 of the Civil Service Law of New York since many individuals on that list were not residents of the City.

Beginning on or about December 15, 1975 and continuing through August 13, 1977 the City re-employed suspended firemen, compensating them in part with CETA, HUD or temporary funds. The eligible list was used as a reference to find the names of laid-off firefighters who met the federal eligibility requirements, including residence in the City of New York. These individuals were appointed "provisionally" so as not to

prejudice the rights of the non-resident firefighters who remained on the eligible list. Firemen designated "provisional" were not permitted by the City to accrue seniority credit for their services for purposes of eligibility for Fire Department promotional examinations (e. g., "examinations for promotion to lieutenant or fire marshal titles"), or for computing eligibility for promotion. At the time each individual was appointed to the title "Firefighter" (CETA) and "Firefighter" (HUD), he was informed that his appointment was made on a provisional basis and therefore he would not receive seniority credit for promotional purposes for service in that title.

"Provisional" CETA, HUD and temporary firemen, including the individual plaintiffs were not assigned to duties different from the duties of permanent firemen not compensated by CETA, HUD or temporary funds. They performed the same duties as permanent firemen who were not suspended for economic reasons. In fact, it is claimed that they perform the same duties as they had when they were permanent firemen themselves prior to their suspensions, and as they did when they later became permanent firemen again.

Beginning on or about July 31, 1976, "provisional" CETA, HUD and temporary firemen were notified by the City that their "provisional" status had terminated and that they would be considered permanent CETA or HUD firemen or in the case of temporary firemen, simply as permanent firemen. Firemen whose "provisional" designation was thus removed were permitted to once again accrue seniority for Fire Department service for eligibility for promotional examinations and for computing eligibility for promotions. Thus, although still compensated in part by CETA or HUD funds such firemen who passed from the provisional designation to permanent status continued to be compensated in part by CETA or HUD funds and were permitted to accrue seniority for promotional purposes in the same manner as permanent firemen compensated solely with City funds.

Thereafter, at various times up to August 13, 1977, firemen, including the individual plaintiffs, who had been re-employed by the City as "provisional" CETA, HUD or temporary firemen were notified that they were once again permanent firemen compensated entirely by regular City tax levy funds as they had been prior to June 30, 1975 and that they were entitled to accrue seniority for promotional purposes.

This Court is asked to decide whether plaintiffs are entitled to receive seniority credit for promotional purposes for the time they served as provisional City employees in the titles "Firefighter (CETA)" "Firefighter (HUD)", and "temporary Firefighter." For the reasons set forth below, this Court has determined that plaintiffs have no such entitlement.

1. Plaintiffs contend that the denial of seniority credit for the period of their service in the title "provisional Firefighter (CETA)" is violative of the CETA statute and the regulations promulgated thereunder. However, no private right of action, express or implied, exists to redress alleged violations of CETA or its regulations. *CETA Worker's Organizing Committee v. The City of New York*, 617 F.2d 926 (2d Cir. 1980). *See also, CETA Worker's Action Committee v. The City of New York*, 509 F.Supp. 902 (S.D.N.Y.1981).

The grievance procedure explicitly set forth in the CETA statute provides the exclusive means which Congress intended for redress of any purported statutory wrong. There was no intention manifested by Congress from which to suggest that Congress intended to create a private cause of action in the District Courts to consider a claim of alleged violation of the CETA statute or its regulations.

Plaintiffs seek to base a claim upon 42 U.S.C. § 1983 contending that this statute creates an independent cause of action for violation of the laws of the United States including CETA. This argument is mounted on *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) which plaintiffs claim permits suits under § 1983

based on violations of all federal statutes, i. e. every person who subjects any citizen or other person within the jurisdiction of the United States to the deprivation of any rights secured by the Constitution *and laws,* shall be liable to the injured party. However, § 1983 certainly is not available to remedy violations of statutes which provide an exclusive remedy for violation of its terms. *See Maine v. Thiboutot, supra,* at 2513 n. 11 (Powell, J. dissenting); *LeBoeuf v. Ramsey,* 503 F.Supp. 747 (D.Mass.1980) (violation of Title VII cannot be the basis for a cause of action under section 1983 because to do so would allow the claimant to bypass the detailed administrative process in Title VII); *Chesapeake Bay Foundation v. Virginia State Water,* 501 F.Supp. 821, 826 (E.D.Va.1980) (Section 1983 does not establish a cause of action to remedy an alleged violation of the Federal Water Pollution Control Act since that Act "prescribes a complex and far-reaching set of procedures and remedies to be used where violations of its sections are alleged."); *Meyerson v. State of Arizona,* 507 F.Supp. 859 (D.Ariz.1981) (claimed violation of the Revenue Sharing Act cannot be redressed pursuant to Section 1983 because Congress has provided a remedy within the statute itself.).[1]

The "Comprehensive Administrative Procedure for determination of complaints" found in the CETA statute clearly provides the exclusive remedy for violation of its terms. *CETA Workers, supra,* 617 F.2d at 933–34.

■ 2. Plaintiffs contend that since the work performed by the provisional firemen and the permanent firemen was identical, the defendant's refusal to grant the provisional firemen seniority credit creates an impermissible distinction which violates the Equal Protection Clause of the Fourteenth Amendment.

It is undisputed that defendants did deny plaintiffs' seniority credit for the time they served as provisional CETA and HUD fire-

men and granted such credit to those holding permanent, civil service positions. There was a legitimate purpose for defendants' conduct: compliance with State law. In *Carritue v. Beame,* 90 Misc.2d 504, 395 N.Y.S.2d 573 (Sup.Ct.N.Y.Co.Sp.Term Part I, 1976), *aff'd,* 61 A.D.2d 957, 402 N.Y.S.2d 1012 (1st Dept. 1978), the state court found that even though the CETA firemen performed substantially similar functions as those performed by regular City firemen their legal status was different: they were "provisionals". Under the New York law, there is a difference in legal status between permanent Civil Service employees and temporary or provisional employees. Those holding positions as provisional employees are entitled to none of the rights, including seniority for promotional purposes, which the law attaches to the status of a permanent Civil Service appointee. *Koso v. Greene,* 260 N.Y. 491, 184 N.E. 65 (1933). The denial of seniority credit for service in temporary or provisional positions has long been recognized by the New York courts as a safeguard against abuses of the established Civil Service System. *Sheridan v. Kern,* 255 App.Div. 57, 5 N.Y.S.2d 336 (1st Dept. 1938).

The Court in *Carritue* found that the firemen who were not eligible for the CETA program were not prejudiced by the CETA appointments since the CETA firemen, by dint of their provisional status would not accrue seniority benefits for their CETA service. The provisionals would "remain in the same position on the eligible list for permanent reappointment in relation to their brother firemen who were not eligible for the CETA program." *Carritue, supra,* at 575, 395 N.Y.S.2d 573.

Equality of status implies equality within category—within the class of employment. Unemployed firemen re-employed by temporary appointments or provisional employments are entitled to the emoluments of temporary appointees—they do not become temporaries with the attributes of perma-

---

1. Our attention has been called to the recent decision in *Smith v. City of Chicago,* No. 79 C. 3499 (N.D.Ill.E.D. March 20, 1981). With re-

spect, this Court does not agree with the Illinois Court for the reasons and authorities mentioned above.

nent employees. Upon qualifying as permanent, they ascend to permanent status and to attributes of that class. To hold otherwise—for example—would be to say that employees given the rank of privates are entitled to emoluments of corporals or sergeants or whatever.

The law is not to be construed as directing that seniority rights in the vacated niche be kept open for a laid-off holder of the position so that seniority continues operative during the lay-off and that a temporary return to employment is to be treated as if there was no lay-off. The lay-off eliminated employment at the vacated level. It cannot be that a temporary return is to be treated as if there never was a vacated employment. Seniority accruals as well as salaries are terminated with lay-off and accrue again only with re-employment in the same status as a permanent employee.

The defendants clearly had a rational basis for the actions sought to be reviewed herein. Caught between the requirements of state law to make permanent appointments only in rank order from an eligible list, and a federal funding rule which limited hiring only to those persons residing in New York City, a complex appointment process was developed. Federal funds were used to hire provisionals without regard to the eligible list. As soon as a combination of City and Federal funds became available to hire all persons on the eligible list in rank order, the eligible list was certified and permanent appointments were made in rank order without regard to a fireman's place of residence. Such appointments carried all the emoluments of permanent employment including seniority credit for promotional purposes. Since there was a legitimate purpose for defendants' policies, plaintiffs' federal and state constitutional and the statutory claims must be dismissed.

Defendants' motion to dismiss is granted and plaintiffs' complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted.

SO ORDERED.