**UNIFORMED FIREFIGHTERS ASSOCIATION, LOCAL 94, IAFF, AFL–CIO, et al., Plaintiffs-Appellants,**

v.

**The CITY OF NEW YORK, et al., Defendants-Appellees.**

**No. 225, Docket 81–7387.**

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1981.

Decided March 25, 1982.

John F. Mills, Garden City, N. Y. (Colleran, O'Hara, Kennedy & Mills, P. C., Garden City, N. Y., James V. Morgan, Cohen, Weiss & Simon, New York City, on the brief), for plaintiffs-appellants.

Fay Leoussis, New York City (Allen G. Schwartz, Corp. Counsel for the City of New York, Carolyn E. Demarest, New York City, on the brief), for defendants-appellees.

Before LUMBARD and NEWMAN, Circuit Judges, and ZAMPANO,* District Judge.

NEWMAN, Circuit Judge:

The City of New York, as a result of a severe financial crisis, was forced in June 1975 to lay off approximately 1650 firefighters. Later, in December 1975, the City rehired approximately 400 of these firefighters, using funds obtained pursuant to the Comprehensive Employment and Training Act of 1973 ("CETA"), 29 U.S.C. § 801 *et seq.* (1976) (prior to 1978 amendment), and from the United States Department of Housing and Urban Development ("HUD"). These rehired firefighters, who were compensated in part with CETA, HUD, or temporary City funds, were notified at the time of rehiring that, because their appointments were on a provisional basis,[1] they would not receive seniority credits for promotional purposes for time served as "provisional CETA," "provisional HUD," or "temporary" firefighters.

Uniformed Firefighters Association, Local 94, IAFF, AFL–CIO, its president, and ten individual firefighters who are Union members instituted a suit against various New York City defendants ("the City"),[2] alleging that the denial of seniority credits violated their rights under the Equal Protection Clause of the Fourteenth Amendment, CETA and its accompanying regulations, 42 U.S.C. § 1983, and various New York laws. The District Court for the

---

\* The Honorable Robert C. Zampano of the United States District Court for the District of Connecticut, sitting by designation.

1. The City had promulgated a "preferred" eligibility list of the laid-off firefighters pursuant to New York law. *See* N.Y.Civ.Serv.Law § 81 (McKinney 1973). Section 81 requires the City to fill vacancies from this preferred eligibility list. Under CETA regulations, however, participants in the CETA program must "reside within the geographic area for which funds have been designated," 29 C.F.R. § 99.38(a) (1981)— *i.e.*, in New York City. Since many of the laid-off firefighters resided outside of New York City and therefore could not be rehired with CETA funds, the City decided to rehire resident firefighters on a provisional basis, without the accrual of seniority credits, to avoid prejudicing the rights of the non-resident firefighters on the preferred eligibility list.

2. Defendants are the City of New York; its Mayor; the Civil Service Commission of the City of New York, its Chairman, and four Civil Service Commissioners; the Department of Personnel of the City of New York and its Director; and the Fire Department of the City of New York and its Fire Commissioner.

Southern District of New York (Milton Pollack, Judge) granted the City's motion to dismiss for failure to state a claim on which relief may be granted. Judgment was entered April 20, 1981. For the reasons stated below, we affirm.

The District Court was correct in holding that there is no implied private right of action under CETA. *See CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926, 934 (2d Cir. 1980). Appellants attempt to distinguish *CETA Workers'*, arguing that the nature of the action and the relief sought in that case differ from the instant case. But we did not limit the *CETA Workers'* decision to the precise set of facts there presented. In determining that at least two parts of the four-part test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), were not met, we emphasized the comprehensiveness of CETA's administrative procedures for processing grievances and noted that the statute authorizes the Secretary of Labor to rectify violations of CETA, subject to judicial review. *See* 617 F.2d at 933. "Congress, relying on the Secretary's expertise and ability to balance the various elements of the program in the interest of the various recipients, present and future participants, and so on, has established an elaborate system of administrative review, which would appear intended to be exclusive." *Id.* at 933–34. We therefore reject appellants' claim that the District Court erred in dismissing their claim based on an implied private right of action under CETA.

Appellants are no more successful in attempting to allege a violation of CETA as a claim under 42 U.S.C. § 1983.[3] Although the Supreme Court indicated in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), that § 1983 provides a remedy for state action in violation of any federal statute, the Court has subsequently qualified the breadth of the § 1983 remedy for statutory violations. *See Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19–22, 101 S.Ct. 2615, 2625–27, 69 L.Ed.2d 435 (1981); *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). In *Pennhurst*, the Court stated that *Thiboutot* does not permit use of § 1983 to redress a violation of a statute if "the 'governing statute provides an exclusive remedy for violations of its terms.'" *Id.* at 28, 101 S.Ct. at 1545 (quoting *Maine v. Thiboutot, supra*, 448 U.S. at 22 n.11, 100 S.Ct. at 2513 n.11 (Powell, J., dissenting)). In *Sea Clammers*, the Court further observed, "When the remedial devices provided in a particular act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20, 101 S.Ct. at 2626. We think that CETA's comprehensive remedial scheme[4] provides an exclusive remedy. As we noted in *CETA Workers'*, "The totality of [CETA's remedial] provisions, comprehensive and well-crafted to the Act's administrative, institutional, and political exigencies, affirms the primacy and suggests the exclusivity of the grievance procedures, at least in cases seeking redress against a

---

**3.** Appellants contend that the denial of seniority credits to the provisional firefighters violates 29 U.S.C. § 848(a)(4) (1976) (current version at 29 U.S.C. § 824(k) (Supp.IV 1980)), which provided that

all persons employed in public service jobs under this subchapter will be assured of workmen's compensation, health insurance, unemployment insurance, and other benefits, at the same levels and to the same extent as other employees of the employer and to working conditions and promotional opportunities neither more nor less favorable than such other employees enjoy.

**4.** Section 106 and 107 of CETA, as amended in 1978, 29 U.S.C. §§ 816–817 (Supp.IV 1980), pro-

vide a number of remedies: a grievance procedure, including a hearing, *id.* § 816(a)(1); investigation of the complaint by the Secretary of Labor within twenty days of receipt of the complaint, *id.* § 816(b); revocation of a prime sponsor's comprehensive employment and training program and termination of financial assistance to the prime sponsor for its discrimination or other violations, *id.* § 816(c); and termination or suspension of a prime sponsor's financial assistance for noncompliance with CETA's provisions, *id.* § 816(d)(1)–(2), (e). In addition, the Act provides for judicial review of the Secretary's decision, *id.* § 817.

prime sponsor or other recipient of funds." 617 F.2d at 930–31.

The existence of a "saving clause" within CETA does not alter our conclusion. Section 106(*l*), 29 U.S.C. § 816(*l*) (Supp.IV 1980), provides:

> The existence of remedies under this section shall not preclude any person, who alleges that an action of a prime sponsor or of any other recipient violates any of the provisions of the chapter or the regulations promulgated under the chapter, from instituting a civil action or pursuing any other remedies authorized under Federal, State, or local law.

Whatever else this section may mean, we do not construe it to authorize a statutory violation claim under § 1983, since the Supreme Court was not persuaded by a similar argument involving a comparable provision in *Middlesex County Sewerage Authority v. National Sea Clammers Association, supra*, 453 U.S. at 20–21 n.31, 101 S.Ct. at 2626–27 n.31.[5]

 Appellants also cannot succeed in their § 1983 constitutional claim, which alleged that the denial of seniority credits to provisional firefighters and their allowance to regular City firefighters constitutes a violation of the Equal Protection Clause. The appellants were provisional employees under state law, *Carritue v. Beame*, 90 Misc.2d 504, 395 N.Y.S.2d 573 (Sup.Ct.1976), *aff'd*, 61 A.D.2d 957, 402 N.Y.S.2d 1012 (1st Dep't 1978), and as such were not entitled to protections, including seniority credits, that state law extends only to regular civil service employees. *Koso v. Greene*, 260 N.Y. 491, 184 N.E. 65 (1933). The Equal Protection Clause is not violated by a governmental decision to limit seniority credits to employees appointed pursuant to civil service regulations, a restriction that manifestly advances the governmental interest in preventing abuses of the civil service system, *see Sheridan v. Kern*, 255 A.D. 57, 5 N.Y.S.2d 336 (1st Dep't 1938).

Finally, the District Court was correct in dismissing appellants' pendent state law claims. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Accordingly, the judgment of the District Court is affirmed, 512 F.Supp. 289.

---

5. Since we find § 1983 unavailable to support appellants' statutory claim because CETA provides an exclusive administrative remedy, we need not consider whether CETA creates "rights, privileges, or immunities" within the meaning of § 1983. *Cf. Sea Clammers, supra*, 453 U.S. at 19, 101 S.Ct. at 2626 (declining to determine if water pollution legislation creates rights enforceable under § 1983 because of comprehensive remedial devices in the legislation).