294 S.E.2d 910

**Linda BONNELL, et al.**

**v.**

**Don H. CARR, Supt., Doddridge County Board of Education, etc., et al.**

**Mary Jane VARNER, et al.**

**v.**

**Charles L. COFFMAN, Supt., Pendleton County Board of Education, etc., et al.**

**Nos. 15190, 15191.**

Supreme Court of Appeals of West Virginia.

June 23, 1982.

Rehearing Denied Sept. 16, 1982.

Heidi Weintraub, Charleston, Robert J. Lamont, Huntington, for appellants in both cases.

M. E. Mowery, Jr., Parkersburg, for appellees Don H. Carr et al.

George I. Sponaugle, Franklin, for appellees Charles L. Coffman et al.

MILLER, Chief Justice:

In these two cases which were consolidated for appeal, we are asked to decide the rights of auxiliary school personnel whose salaries were federally funded under the Comprehensive Employment and Training Act, 29 U.S.C. § 801 *et seq.*, (CETA), and who were terminated from their employment when the CETA program was altered.[1]

The appellants who are the terminated auxiliary personnel argue that notwithstanding the cessation of their CETA eligibility, they had already acquired continuing contract status under W.Va.Code, 18A–2–6 (1973), and that as a result of this continuing contract status they were entitled to the procedural protections afforded thereby. They rely on the provisions of W.Va. Code, 18A–4–8 (1976), which in pertinent part provides:

"In addition to the compensation herein provided for auxiliary and service personnel, each auxiliary or service employee shall, notwithstanding any provision in this code to the contrary, be entitled to all auxiliary and service personnel employee rights, privileges and benefits provided under this or any other chapter of this code without regard to such employee's hours of employment *or the methods or sources of compensation.*" (Emphasis added)

The appellees, the two local Boards of Education, counter with the proposition that since the appellants' salaries were funded by the CETA program, they were not local board employees and therefore not entitled to the statutory protections afforded to service personnel. Before resolving these questions, it is necessary to briefly describe the background of each case.

I.

FACTS

A. BONNELL V. CARR (Doddridge County Board of Education)

Three of the four appellants—Helen Harbert, Linda Lou Jones and Glenda McCloy—began working as teacher's aides for the Doddridge County Board of Education in October 1969. In August 1973, these three appellants signed a "Service and Auxiliary Personnel Contract" with the Board. In November 1975, they signed a "Continuing Contract" with the Board.[2]

---

1. The parties appear to agree that the terminations occurred after the 1978 Amendment to 29 U.S.C. § 824(h), which limited participation in the CETA program to eighteen months (78 weeks) in a five-year period:

"(h)(2) No participant may be paid wages from funds under this chapter for public service employment for more than 78 weeks in a 5-year period.

(3) For purposes of paragraph (2), no more than 26 weeks of public service employment financed in whole or in part under this Act prior to October 1, 1978, shall be considered as part of the 78 weeks."

2. W. Va. Code, 18A–2–6 (1973), provides for continuing contracts for auxiliary and service personnel. In the 1977 Replacement Volume No. 7 of the Michie's West Virginia Code, this provision is erroneously carried under W. Va. Code, 18A–2–7, and the provisions of W. Va. Code, 18A–2–6, prior to its amendment by the 1973 Acts of the Legislature, Chapter 127, are still retained as W. Va. Code, 18A–2–6. The 1981 pocket supplement carries the 1981 amendments to W. Va. Code, 18A–2–6, which basically reflect the fact that the separate categories of "auxiliary" and "service" school personnel have now been combined under the term "service personnel" by virtue of the definitions found in W. Va. Code, 18A–1–1 (1981). We set out the provisions of W. Va. Code, 18A–2–6 (1973), as they existed until the 1981 amendments:

"After three years of acceptable employment, each auxiliary and service personnel who enters into a new contract of employment with the board shall be granted continuing contract status. The continuing contract of any such employee shall remain in full force and effect except as modified by mutual consent of the school board and the employee, unless and until terminated with consent of the school board and the employee, unless and until terminated with written notice, stating cause or causes, to the employee, by a majority vote of the full membership of the board before the first day of April of the then current year, or by written resignation of the employee before that date. The affected employee shall have the right of a hearing before the board, if requested, before final action is

Appellant McCloy signed three additional contracts with the Board during the period of her employment. During the years 1969–1975, these appellants' source of compensation came from a federally funded Title I program. From 1975 onward, their source of compensation came from the CETA program.[3]

Appellant Linda Bonnell was hired in July 1975 but did not execute a continuing contract with the Board, however, in all respects Appellant Bonnell was treated like other Board personnel and had become eligible for continuing contract status prior to her termination. Appellant Bonnell's compensation was at all times funded by the CETA program.

On April 2, 1979, each appellant received notice from the Board that her employment would be terminated effective September 30, 1979. Each appellant filed a grievance with the Board on October 1, 1979, based on their continuing contract status. The Board rejected these grievances stating that they did not believe the appellants to be Board "employees."

The appellants then filed a Writ of Mandamus in the Circuit Court of Doddridge County seeking reinstatement to their jobs with back pay and benefits. The circuit court found that the appellants should be treated as Board employees because of their continuing contract status. The court concluded they had been improperly terminated and awarded them back pay and benefits, but did not order their reinstatement. The appellants contend that they are aggrieved by the failure of the circuit court to order their reinstatement.

### B. VARNER V. COFFMAN (Pendleton County Board of Education)

This case involves two auxiliary personnel, Mary Jane Varner and Mary Kay Alt. Varner began employment as a teacher's aide for the Pendleton County Board of Education in June 1973. Her compensation

was through Board funds until October 1974 when her compensation started to come from the federally funded CETA program. Alt began employment as a teacher's aide with the Board in January 1976, and at all times was compensated with CETA funds.

On March 26, 1979, both appellants were informed by the Board that their employment would be terminated effective September 30, 1979. Neither appellant was given notice of a right to a hearing before final action would be taken on their termination. On February 13, 1980, the appellants filed a petition for a Writ of Mandamus in the Circuit Court of Pendleton County against the Board seeking a hearing and reinstatement with back pay. At the March 5, 1980, hearing, the Board stated that a change in CETA regulations limited payment to individuals compensated through CETA for a period of eighteen months and since both appellants had been compensated through CETA for more than eighteen months, they were given termination notices. Eleven individuals employed by the Board were affected by the change in CETA regulations, however, five continued their employment with compensation through Board funds.

The circuit court denied the appellants' request for relief holding that the appellants had none of the rights and benefits of school board employees, notwithstanding the provisions of W.Va.Code, 18A–4–8 (1976), because they were compensated as trainees under the CETA program. Consequently, the circuit court found that the appellants' terminations were proper.

### II.

### LEGAL CONCLUSIONS

### A. BONNELL V. VARNER (Doddridge County Board of Education)

■ We conclude that the Circuit Court of Doddridge County acted correctly

---

taken by the board upon the termination of such employment.

"Those employees who have completed three years of acceptable employment as of the effective date of this legislation [July 10,

1973] shall be granted continuing contract status."

**3.** The CETA enactments are contained in 29 U.S.C. § 801 *et seq.*

in holding that the four auxiliary personnel had continuing contract status under W.Va. Code, 18A–2–6 (1973). Three of these individuals actually signed continuing contracts after their three years of initial service. The fact that Appellant Bonnell, the fourth employee, at the end of her third year of employment did not sign a continuing contract is not controlling because the circuit court found that the board had treated her the same as its other employees. Under W.Va.Code, 18A–2–6 (1973), a continuing contract of employment shall be granted to auxiliary and service personnel "[a]fter three years of acceptable employment." While W.Va.Code, 18A–2–4 (1969),[4] authorizes the employment of auxiliary personnel by "a written contract which may be in letter form," we do not believe that a written contract is essential in all instances once an employee completes three years of acceptable service and is reemployed by the board.

Substantially, the same language as to continuing contract status is contained in W.Va.Code, 18A–2–2 (1969),[5] relating to teachers. We have stated in *Mason County Board of Education v. State Superintendent of Schools*, 160 W.Va. 348, 234 S.E.2d 321, 323 (1977) that this statute places on the local boards of education "a mandatory duty to enter into written contracts with its teachers." In the absence of any showing on the part of the Board in this case that Appellant Bonnell did not have three years of acceptable service, the fact that she did not sign a continuing contract is not controlling once she was reemployed at the end of her third year.

In *Perry v. Independent School District No. 969*, 297 Minn. 197, 210 N.W.2d 283 (1973), the court concluded that once a teacher had obtained continuing contract status, the fact that she signed a limited contract denominated as a "long-term substitute" which expired at the end of a year, would not foreclose her right to have the contract treated as a continuing contract. The court relied on *State ex rel. Rose v. Board of Education*, 74 Ohio App. 63, 57 S.E.2d 609 (1944) and *Becker v. Board of Education*, 9 N.Y.2d 111, 211 N.Y.S.2d 193, 172 N.E.2d 568 (1961). The courts in these cases recognized that it might be possible for a teacher to voluntarily agree to something less than a continuing contract once she had met the qualifications for a continuing contract, but they also recognized that such a waiver could not be lightly inferred. The reason advanced was that the board of education had the initial duty of following the statutory provisions and extending a contract unless it was determined that the teacher was not qualified. This reasoning parallels ours as noted in *Mason County Board of Education v. State Superintendent of Schools, supra.*

There is little doubt that the Legislature intended to confer continuing contract status after three years of acceptable service on auxiliary and service personnel under W.Va.Code, 18A–2–6 (1973).[6] The statutory language is unambiguous and parallels the provisions of W.Va.Code, 18A–2–2 (1969), with regard to the continuing contract status of teachers. In our earlier cases we had indicated that once continuing

---

**4.** W. Va. Code, 18A–2–4 (1969), was repealed in 1981 to reflect the merger of the terms "auxiliary" and "service" personnel into one category called "service" personnel. *See* note 2, *supra.* The same provision is now found in W. Va. Code, 18A–2–5 (1981).

**5.** The pertinent part of W. Va. Code, 18A–2–2 (1969), states:

"A teacher's contract, under this section, shall be for a term of not less than one nor more than three years; and if, after three years of such employment, the teacher who holds a professional certificate, based on at least a bachelor's degree, has met the qualifications for the same, and the board of education enter into a new contract of employ-

ment, it shall be a continuing contract ... The continuing contract of any teacher shall remain in full force and effect except as modified by mutual consent of the school board and the teacher, unless and until terminated (1) by a majority vote of the full membership of the board before April first of the then current year, after written notice, served upon the teacher, return receipt requested, stating cause or causes, and an opportunity to be heard at a meeting of the board prior to the board's action thereon, or (2) by written resignation of the teacher before that date."

**6.** *See* note 2, *supra.*

contract status was achieved a teacher could not be discharged except for cause. *Beverlin v. Board of Education of Lewis County*, 158 W.Va. 1067, 216 S.E.2d 554 (1975); *Bates v. Board of Education of Mineral County*, 133 W.Va. 225, 55 S.E.2d 777 (1949). In view of the parallel statutory language, we see no reason not to accord continuing contract status to auxiliary and service personnel who are reemployed after three years of acceptable service. As in the case of a teacher the fact that a continuing contract is not actually signed does not destroy the employee's continuing contract status if such employee is rehired after the three years of acceptable employment.

It can hardly be argued that a local board of education may accidentally rehire a probationary employee for a fourth year which it did not want and thereby confer continuing contract status on an undesired employee. Under W.Va.Code, 18A–2–8a (1977),[7] the board is required to receive from the superintendent a list of all probationary employees who are to be considered for rehiring on or before the first Monday in May. Those probationary personnel who are not rehired must be sent notices. Consequently, the board will have actual notice of who is proposed to be rehired and must take affirmative steps to approve rehiring.

 The appellants further argue that once the circuit court found they had continuing contract status it should have ordered them reinstated in addition to giving them back pay for the 1980–81 school year. The circuit court was apparently of the view that reinstatement was inappropriate since they could have been terminated at the end of a school year. We have held,

however, as to teachers who obtain continuing contract status that if they are wrongfully terminated without cause, such terminated employee is entitled to reinstatement. *E.g., Mason County Board of Education v. State Superintendent of Schools, supra; Trimboli v. Board of Education of Wayne County*, 163 W.Va. 1, 254 S.E.2d 561 (1979); *Fox v. Board of Education of Doddridge County*, 160 W.Va. 668, 236 S.E.2d 243 (1977); *Beverlin v. Board of Education of Lewis County, supra.* The reason for permitting reinstatement is that a teacher with a continuing contract status has a right to continued employment unless he is terminated for cause. We discussed this principle in Note 1 of *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977):

"*W.Va.Code*, 18A–2–2 [1969] provides that a teacher's initial employment contract shall be for a term of not less than one nor more than three years. After three years' employment, a qualified teacher may, upon the county superintendent's nomination and the county school board's approval, enter into a continuing employment contract. *W.Va. Code*, 18–4–10 [1967]. The first three years of employment are considered to be 'probationary.' A teacher whose contract is renewed after the probationary period has acquired 'tenure.' The concept of tenure is designed to secure a high degree of self-expression and freedom from undue influences for those teachers who have proven themselves worthy. A tenured teacher may have his or her contract terminated by a school board only for those causes specifically set forth in *W.Va.Code*, 18A–2–8

---

7. The material part of W. Va. Code, 18A–2–8a (1977), is:

"The superintendent at a meeting of the board on or before the first Monday in May of each year shall provide in writing to the board a list of all probationary teachers that he recommends to be rehired for the next ensuing school year. The board shall act upon the superintendent's recommendations at that meeting in accordance with section one [§ 18A–2–1] of this article. The board at

this same meeting shall also act upon the retention of other probationary employees as provided in sections four and five [§§ 18A–2–4 and 18A–2–5] of this article. Any such probationary teacher or other probationary employee who is not rehired by the board at that meeting shall be notified in writing, by certified mail, return receipt requested, to such persons' last known addresses within ten days following said board meeting, of their

[1969]." [8]

Elsewhere the generally accepted rule is that where a tenured employee of a school system has been wrongfully discharged such employee is entitled to reinstatement. *University of Alaska v. Chauvin*, 521 P.2d 1234 (Alaska 1974); *School District No. 6 of Pina County v. Barber*, 85 Ariz. 95, 332 P.2d 496 (1958); *Barthuli v. Board of Trustees of Jefferson Elementary School District*, 19 Cal.3d 717, 139 Cal.Rptr. 627, 566 P.2d 261 (1977), *cert. denied*, 434 U.S. 1337, 98 S.Ct. 21, 54 L.Ed.2d 52; *Howell v. Woodlin School District R-104*, 198 Colo. 40, 596 P.2d 56 (1979); *School District No. Fifty of Adams County v. Witthaus*, 30 Colo.App. 41, 490 P.2d 315 (1971); *Catino v. Board of Education of Town of Hamden*, 174 Conn. 414, 389 A.2d 754 (1978); *Thayer v. Anacortes School District*, 81 Wash.2d 709, 504 P.2d 1130 (1972).

■ We conceive that the Legislature by enacting W.Va.Code, 18A–2–6 (1973), which gives auxiliary and service personnel continuing contract status after three years of acceptable employment and providing that their employment could be terminated upon cause, intended to extend a tenure status to such employees. Consequently, we believe that the Circuit Court of Doddridge County erred in not granting reinstatement.

■ The Doddridge County Board of Education's argument that CETA employees should not be considered Board employees because they were paid by federal funds at the state level, is not controlling in the face of the continuing contract status actually obtained by the affirmative action of the Doddridge County Board of Education. This fact was found by the Circuit Court of Doddridge County and is supported in the record.

The school board points to the policy statement found in Section 853 of the CETA statute which provided for "transitional" employment, but when the several congressional statements of purposes are read together they provide no indication that permanent employment of CETA employees by the initial employer is forbidden or frowned upon.[9] To the contrary, the primary thrust of the program is to train and assist the economically disadvantaged so that they can obtain permanent employment.

We are cited several cases where the courts have held that CETA employees have no independent employment rights other than what is conferred by the CETA program: *CETA Workers' Organizing Committee v. City of New York*, 617 F.2d 926 (2d Cir. 1980); *Hayward v. Henderson*, 623 F.2d 596 (9th Cir. 1980); *Hark v. Dragon*, 477 F.Supp. 308 (D.Vt.1979), *aff'd*, 611 F.2d 11 (2d Cir.); *Hood River County v. United States Department of Labor*, 532 F.2d 1236 (9th Cir. 1976); *Maloney v. Sheehan*, 453 F.Supp. 1131 (D.Conn.1978); *White v. City of Paterson*, 137 N.J.Super. 220, 348 A.2d 798 (1975); *Carritue v.*

---

not having been rehired or not having been recommended for rehiring."

8. W. Va. Code, 18A–2–2 (1969), provides that teachers under a continuing contract may be dismissed "based upon the lack of need for the teacher's services pursuant to the provisions of law relating to the allocation to teachers and pupil-teacher ratios." This section also authorizes their name to be placed on a preferred list for purposes of rehiring. The issue of lack of need for the auxiliary or service personnel who have been found to have continuing contracts in the Doddridge County case was not raised and, therefore, we do not address this question. *Cf. Newcome v. Board of Education of Tucker County*, 164 W.Va. 1, 260 S.E.2d 462 (1979); *Bates v. Board of Education of Mineral County, supra.*

9. The CETA statute was first enacted in 1973 and contained this statement of purpose in Section 801 of Chapter 29 of the United States Code:

"It is the purpose of this chapter to provide job training and employment opportunities for economically disadvantaged, unemployed, and underemployed persons, and to assure that training and other services lead to maximum employment opportunities and enhance self-sufficiency by establishing a flexible and decentralized system of Federal, State, and local programs."

Additional amendments were made in 1978 when Section 853 was adopted:

"It is the purpose of this part to provide economically disadvantaged persons who are unemployed with transitional employment in jobs providing needed public services, and related training and services to enable such persons to move into employment or training not supported under this chapter."

*Beame,* 90 Misc.2d 504, 395 N.Y.S.2d 573 (1976). These cases however deal with situations where the CETA employee was not accorded any additional status by the employing agency. Here, the Circuit Court of Doddridge County found that continuing contracts were extended to the appellants.

## B. VARNER V. COFFMAN (Pendleton County Board of Education)

■ The critical distinction between this case and its companion is that here no evidence was found by the lower court that the employees were ever accepted as a part of the local Board by the act of being offered continuing contracts. The appellants argue that this is not critical since the provision of W.Va.Code, 18A–4–8 (1976),[10] which gives auxiliary and service personnel all the "privileges and benefits provided under this or any other chapter of this code without regard to such employee's hours of employment or the methods or sources of compensation," gives them all the rights of regularly employed auxiliary personnel. We do not believe that this language can be so interpreted. This provision came about by amendments made to W.Va.Code, 18A–4–8, in Chapter 203 of the 1975 Acts of the Legislature. Prior to this date, W.Va. Code, 18A–4–8 (1973),[11] set the pay for auxiliary and service personnel at a flat monthly rate of $335.00 and a provision was made for a pro-rata adjustment for those employees working less or more than the normal working day.[12] In 1974, W.Va. Code, 18A–4–8,[13] was again amended and auxiliary and service personnel were classified in accordance with a table similar to the one currently used, W.Va.Code, 18A–4–8 (1981).[14] The 1974 Amendment however did not provide for payment to part time auxiliary. or service employees.

In 1975, this problem was corrected by expressly providing for minimum salaries for part time auxiliary and service personnel. The 1975 statutory Amendment[15] is substantially similar to the current provision, W.Va.Code, 18A–4–8 (1981), except as to pay amounts. Clearly, the new language brought into W.Va.Code, 18A–4–8, by the 1975 Amendment relating to rights of auxiliary personnel "without regard to such employee's hours of employment or method or source of compensation" was designed to recognize the change made by the 1975 Amendment in giving minimum salaries to part time employees. Thus, part time auxiliary personnel regardless of the hours worked were entitled to the benefits of regular auxiliary personnel. This quoted language was also designed to recognize that auxiliary personnel could be paid from different sources of funds, a point that we discussed at some length in *Thomas v. The Board of Education, County of McDowell,* 164 W.Va. 84, 261 S.E.2d 66 (1979). The issue was whether a county board of education which had obtained voter approval of a special levy that supplemented the salaries of non-teaching employees could use these funds as a credit on the state minimum salaries that the county was required to pay under W.Va.

---

10. 1976 Acts of Legislature, 2nd Ex. Sess., c. 11.

11. 1973 Acts of Legislature, 1st Ex. Sess., c. 32.

12. The pertinent portion of W. Va. Code, 18A–4–8 (1973), was:

"From the effective date of this article, the county board of education pay scale for auxiliary and service personnel shall not be less than three hundred thirty-five dollars per month: *Provided,* That auxiliary and service personnel who are employed for less or for more than the normal working day established for a specific job position shall have their minimum pay increased or reduced in proportion to the above pay scale."

13. 1974 Acts of Legislature, 2nd Ex. Sess., c. 17.

14. 1981 Acts of Legislature, 1st Ex. Sess., c. 5.

15. The pertinent provision of W. Va. Code, 18A–4–8 (1975), is:

"On and after the first day of July, one thousand nine hundred seventy-five, the minimum monthly pay for each auxiliary or service employee whose employment is for a period of more than three and one-half hours a day shall be at least the amounts indicated in the following 'State Minimum Pay Scale,' and the minimum monthly pay for each auxiliary or service employee whose employment is for a period of less than three and one-half hours a day shall be at least one-half the amount indicated in the following 'State Minimum Pay Scale'."

Code, 18A–4–8 (1973). We held they could not take such credit.

One of the arguments advanced by the local board in *Thomas v. The Board of Education, County of McDowell, supra,* was that a further provision placed in W.Va.Code, 18A–4–8, by the 1973 Amendments which prohibited the county from reducing local funds allocated for auxiliary and service personnel should be read to permit the credit.[16] We rejected this argument and stated:

"[This] provision is intended to ensure that local funds allocated for salary supplements in excess of the state minimum salaries will continue to be used for that purpose and will not be diminished or diverted, in whole or in part, to other uses merely because the Legislature increased the amount of the state minimum salary to equal or to surpass the amount being paid by the county school board." *Thomas v. The Board of Education, County of McDowell, supra* at 71.

What emerges from this Legislative review is that the particular provision in W.Va.Code, 18A–4–8 (1976), relied upon by the appellants to give them enchanced statutory rights, cannot be traced to any concern for CETA employees but rather to the Legislature's desire to ensure that part time school employees and employees who receive funds from different funding sources are not automatically excluded from statutory benefits.

By refusing to hold that this provision automatically applies to CETA employees, we do not mean to imply that CETA employees can never accrue to continuing contracts afforded by W.Va.Code, 18A–2–6 (1973). What we do hold is that W.Va. Code, 18A–4–8 (1976), alone does not operate to confer on CETA employees the full statutory rights given regularly employed auxiliary personnel. In determining whether the Pendleton County appellees are entitled to the protection afforded by W.Va.

Code, 18A–2–1 *et seq.,* we do not believe the source of their wage payment is critical such that if their pay checks are coming from the state level then this does not automatically mean that they are not employed by the local board.

■ The critical factor is the action of the local board of education. In *Bonnell v. Carr,* the Board extended continuing contracts and the court found that the Board had thereby accepted them as regular employees once it gave them continuing contract status. Consequently, the Board could not at a later time discharge them without affording them the procedural rights ordinarily given to auxiliary employees. In *Varner v. Coffman,* the circuit court found that the local Board had not treated the employees as within its regular employment practices and, therefore, they remained in a CETA status. We cannot say that the circuit court's finding was clearly wrong. As the cases earlier cited reveal, once an employee in the CETA program is found not to have acquired any separate or enhanced rights conferred by the employing authority, such employee's rights are controlled by the provision of the CETA legislation. *CETA Workers' Organizing Committee v. City of New York, supra; Hayward v. Henderson, supra; Hark v. Dragon, supra; Hood River County v. United States Department of Labor, supra; Maloney v. Sheehan, supra; White v. City of Paterson, supra*; and *Carritue v. Beame, supra.*

We, therefore, affirm the judgment of the Circuit Court of Pendleton County. In regard to the judgment of the Circuit Court of Doddridge County we affirm its judgment, except as to its holding that the appellants were not entitled to reinstatement and as to this holding for the reasons stated above it is reversed.

Affirmed as to the Circuit Court of Pendleton County.

---

**16.** The full text of this provision which is also in the current statute, W. Va. Code, 18A–4–8 (1981), is:

"In establishing such local salary schedules, no county, from the effective date of this article, shall reduce local funds allocated for auxiliary and service personnel salaries used for supplementing federal and state funds provided for such salaries."

Affirmed in part and Reversed in part as to the Circuit Court of Doddridge County.